485 A.2d 1134

COMMONWEALTH of Pennsylvania

v.

Carl MACOLINO, Appellant.

COMMONWEALTH of Pennsylvania

v.

Gae Bernadette MACOLINO, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 20, 1981.

Filed Dec. 7, 1984.

388

John R. Carroll, Philadelphia, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Newton Square, for Commonwealth, appellee.

Before BECK, WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants contend that the affidavit employed in the instant case was insufficient to show probable cause for the issuance of the search warrant. We disagree and, accordingly, affirm the judgment of sentence.

On October 27, 1979, the Pennsylvania State Police, while executing a search warrant, discovered four bags of cocaine and related drug materials in appellants' home at 432 Holmes Road, Morton, Pennsylvania. Appellants' pre-trial motions to suppress the evidence seized during the search were denied and, following a non-jury trial, appellant Carl Macolino was found guilty of possession of a controlled substance with intent to deliver and criminal conspiracy, while appellant Gae Macolino was found guilty only of criminal conspiracy. Post-trial motions were denied, and Carl Macolino was sentenced to a term of imprisonment of eleven-and-a-half-to-twenty-three months on the possession offense and a consecutive term of three years probation on the conspiracy charge. Gae Macolino was sentenced to two years probation. On appeal, this Court reversed the judgments of sentence and ordered appellants discharged on the ground that the evidence was insufficient to support their convictions. *Commonwealth v. Macolino*, 302 Pa.Superior Ct. 96, 448 A.2d 543 (1982). Upon the Commonwealth's appeal of the reversal of Carl Macolino's judgment of sentence for possession,[1] the Supreme Court found the evidence sufficient, reversed our order and remanded for disposition of appellants' remaining contentions. *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983). The case is presently before us on that remand.

"[The issuing magistrate's] determination of probable cause should be paid great deference by reviewing courts." *Commonwealth v. Frye*, 242 Pa.Superior Ct. 144, 148, 363 A.2d 1201, 1203 (1976). "[P]robable cause exists when the facts and circumstances set forth in the affidavit are sufficient to warrant a man of reasonable caution in the belief that the contraband to be seized was in the specified place." *Id.* "[O]nly the probability, and not a prima facie showing of criminal activity is the standard of probable cause". *Id.* This Court has recently followed the United States Supreme Court in its abandonment of the "two-

---

1. The Superior Court's reversal of appellants' conspiracy convictions was not appealed by the Commonwealth.

▮▮▮▮▮▮▮▮▮

pronged test" for evaluating the sufficiency of search warrant affidavits established in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and its decision to "reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations." *Commonwealth v. Price*, 318 Pa.Superior Ct. 240, 245, 464 A.2d 1320, 1323 (1983), *quoting Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Under this totality of the circumstances test,

> [t]he task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

464 A.2d at 1324, *quoting Illinois v. Gates, supra.*

In the instant case, the affidavit for the search warrant, which was prepared by Pennsylvania State Trooper Ralph Periandi, listed cocaine and related drug materials as the items to be searched for and seized; 432 Holmes Road, Morton, Pa. as the premises to be searched; and Carl Macolino, aka "Charlie" (appellant) as the owner/occupant of these premises. The affidavit averred that the probable cause belief was based on the following facts and circumstances:

(1) The affiant met with Detective Leo Matrangola of the Baltimore County Police Department, Narcotics Section, which had been conducting an intensive investigation into interstate cocaine trafficking in the Baltimore area. The primary targets of the investigation were William Bozman of Baltimore, Md., Carl Scarimbolo of Baltimore, Md., and Carl Macolino (appellant) of Morton, Pa.

(2) On September 28, 1979, and October 19, 1979, a Maryland court authorized wiretaps for Bozman's phone (Order

# 1) and for Scarimbolo's phone (Order # 2) at their respective Baltimore residences.

(3) On October 19, 1979, Maryland police intercepted a conversation on Bozman's phone between Bozman and Scarimbolo for the distribution of cocaine to a third party known as Dennis. Dennis was brought into the conversation on a conference call and sought to obtain four ounces of cocaine with a street price of $1900. Scarimbolo told Dennis that he had to make a trip to get the cocaine and would meet Dennis late that night or early the next morning.

(4) On October 19, 1979, Maryland police intercepted a conversation on Scarimbolo's phone. The call was made to a telephone number listed to John Macolino in Florida. Scarimbolo told Macolino that he had made several pickups of cocaine from "Charlie" and intended to pick up four ounces of cocaine from Charlie that night.

(5) On October 19, 1979, Maryland police intercepted another conversation on Scarimbolo's phone between Scarimbolo and "Charlie". The call was made to a telephone number listed to appellant at 432 Holmes Road, Morton, Pa. Scarimbolo arranged to meet with "Charlie" at 12 midnight.

(6) As a result of these phone conversations, Detective Matrangola set up surveillance at 432 Holmes Road, Morton, Pa. At about 30 minutes past midnight on October 20, 1979, Scarimbolo was observed to arrive at 432 Holmes Road and to leave at 1 a.m. Det. Matrangola later observed Scarimbolo to return to his Baltimore residence at 4 a.m. At 4:30 a.m., Scarimbolo was observed to leave his residence and go to a Baltimore shopping center, where he met with a subject operating a Chevrolet pick-up truck registered to Dennis Shifflett of Baltimore.

(7) Shifflett was known to Det. Matrangola as a cocaine distributor in the Baltimore area and was then a target of an investigation by the Drug Enforcement Administration (DEA). The DEA informed Det. Matrangola that a quantity of cocaine obtained through a reliable source from Shif-

flett had been analyzed and identified as high quality cocaine.

(8) Based on Det. Matrangola's expertise in investigating narcotics violations, it was believed that Scarimbolo had obtained four ounces of cocaine from "Charlie" at 432 Holmes Road and made delivery to Shifflett in Baltimore, Md.

(9) On October 21, 1979, Maryland police intercepted a conversation on Scarimbolo's phone between Scarimbolo and John Macolino in Florida. Scarimbolo stated that he was coming to Florida to pick up a quantity of cocaine from Macolino and wanted to know if he was also to pick up a quantity for "Charlie". Macolino told him that "Charlie" had his supply of cocaine and that Scarimbolo was not expected to make any delivery to "Charlie".

(10) As a result of that conversation, Baltimore police followed Scarimbolo to Miami, Florida, on October 21 and 22, 1979, and observed an apparent exchange between Scarimbolo and John Macolino in the Miami area. It was believed that Scarimbolo picked up a large quantity of cocaine.

(11) The above synopses of the four intercepted phone conversations were based on the expertise of Det. Matrangola in the drug investigations field: Det. Matrangola graduated from the police academy with special training in the field of narcotics investigation and had been a member of the Baltimore County Police Department since September 14, 1979. As a police cadet, he had been assigned to the narcotics section, working undercover purchasing drugs from Baltimore street dealers, and became familiar with prices, appearances of drugs, methods of concealment and distribution. He had made over 60 hand-to-hand purchases of controlled dangerous substances, participated in over 200 search and seizure warrants and in the arrest of over 400 violators of narcotics laws, as well as in investigations of narcotics violations, and had been an affiant on three wiretap applications involving drug violations. He had testified

in Maryland courts and was recognized as an expert in the field of narcotics investigation.

(12) The affiant concluded that "Charlie" at 432 Holmes Road was a cocaine supplier using the premises to conduct illegal distribution and to store quantities of controlled dangerous substances and related materials.

(13) On October 27, 1979, Sgt. Joseph Cross of the Baltimore County Police Department reported to Det. Matrangola and Trooper Perandi (affiant) that he arrested Scarimbolo on October 26, 1979 in the Baltimore area and seized from Scarimbolo's person ½ lb. of cocaine and a paper containing the name "Charlie" and a Pennsylvania telephone number listed to appellant at 432 Holmes Road.

■ We find that Trooper Periandi's affidavit clearly demonstrated probable cause for the issuance of the warrant because it stated facts and circumstances sufficient to support a reasonable belief that the specified contraband was present on the premises to be searched.

■ Appellants argue, however, that the affiant merely quoted Det. Matrangola's interpretation of the wiretapped conversations, which were not understandable themselves, and the the transcripts of the actual conversations should have been submitted to the magistrate. We note initially that information obtained pursuant to a wiretap authorized by the court of another state can be used to support a search warrant in Pennsylvania. *Commonwealth v. Bennett*, 245 Pa.Superior Ct. 457, 369 A.2d 493 (1976). Although the transcripts of the actual, intercepted phone conversations do not contain express references to cocaine, understandable to a layman, we believe that the magistrate did not err in relying on Det. Matrangola's synopses, which were based upon his substantial experience and training in drug investigations and his familiarity with code words for drugs, prices and amounts used in the field. Moreover, the conversations were corroborated by the police officer's independent, personal observations of Scarimbolo's visit to appellant's house, Scarimbolo's meetings with Shifflett and

with John Macolino, and by the evidence seized from Scarimbolo's person incident to his arrest. Under these circumstances, we see no reason to disturb the issuing magistrate's determination of probable cause.[2]

Affirmed.

**2.** Appellant also contends that the affidavit only showed possible drug trafficking activity by the occupant of 432 Holmes Road on October 20, 1979, a week before the application for the warrant. Probable cause for the issuance of a search warrant must be established at the time the warrant is issued; therefore, evidence of criminal activity at some prior time will not support a finding of probable cause on the date the warrant issues unless it is also shown that the criminal activity continued up to or about that time. *Commonwealth v. Hagen,* 240 Pa.Superior Ct. 444, 449–50, 368 A.2d 318, 321–22 (1976). Here, we find that there were sufficient indications of continuing illegal activity. John Macolino had informed Scarimbolo over the phone that appellant had an adequate supply of cocaine. When Scarimbolo was arrested on October 27, 1979, with ½ lb. of cocaine, he had on his person a piece of paper with appellant's code name and telephone number on it. In light of the facts contained in the affidavit, we may reasonably conclude that appellant was involved in an ongoing drug network stretching from Pennsylvania to Maryland to Florida.

Appellant's reliance upon *Commonwealth v. Kline,* 234 Pa.Superior Ct. 12, 335 A.2d 361 (1975), is misplaced because that case merely held that probable cause to believe a man has committed a crime on the street does not necessarily give rise to probable cause to search his home. Here, the affidavit showed probable cause of illegal activity in appellant's home.