WIEAND, Judge:
 

 Stephen G. Camperson was tried by jury and was found guilty of two counts each of possession of methamphetamine with intent to deliver and criminal conspiracy. Post-trial motions were denied, and Camperson was sentenced to serve concurrent terms of imprisonment for not less than four years
 
 *359
 
 nor more than ten years and for not less than eight years nor more than sixteen years on his two convictions of possession with intent to deliver. On direct appeal from the judgments of sentence, Camperson raises several issues, which we will review carefully.
 

 The facts of this case are somewhat complicated and have a substantial effect on several of the issues which we have been asked to review. On November 29, 1989, Donald Theisan called Brian Wynn by telephone and asked Wynn if he had methamphetamine for sale. Wynn contacted Stephen Camperson, and Camperson agreed to furnish Wynn with the drug. On December 1, 1989, in Chester County, Camperson gave Wynn approximately an ounce of methamphetamine which Wynn, in turn, sold to Theisan in the company of John Murray, an undercover police officer, in Montgomery County. Wynn delivered the proceeds of the sale to Camperson later the same night.
 

 Several days later, Theisan again contacted Wynn and asked Wynn if he could sell to him a quarter pound of methamphetamine. Wynn obtained the methamphetamine from Camperson at or about midnight on December 5, 1989, and sold it to Theisan and Murray in Plymouth Meeting, Montgomery County, on December 6, 1989. Wynn was placed under arrest and subsequently agreed to assist police in prosecuting Camperson. Wynn was released on his own recognizance and taken home.
 

 On December 7, 1989, Wynn met with Camperson, under police surveillance, and paid him $3,500 for the methamphetamine which Camperson had furnished on December 5. Pursuant to instructions from the police, Wynn placed a further order for a half pound of methamphetamine, and he and Camperson agreed to meet later the same day at the Country Tavern, near Pottstown, in Chester County. Camperson then returned to his residence, still under police surveillance. Several hours later, as Camperson neared the Country Tavern, he became aware of the presence of police and attempted to flee. A lengthy chase ensued, following which Camperson was apprehended. On his person were 288.8 grams of metham
 
 *360
 
 phetamine and.the $3,500 which he had received from Wynn earlier in the day.
 

 Following Camperson’s arrest, police obtained a search warrant and searched his residence in St. Peter’s Village, Warwick Township, Chester County. There police found additional drugs and drug paraphernalia. Camperson was subsequently tried for various offenses in Chester County. In Montgomery County, Camperson was tried by jury and was found guilty of being an accomplice in the several sales of methamphetamine made by Wynn to Theisan and John Murray in Montgomery County.
 

 I.
 

 On the morning following the first day of trial, a news article appeared in the Pottstown Mercury under the headline: “Drug trial begins for St. Peter’s man.” The article contained references to a prior escape by Camperson in Chester County and to the charges which he faced in that county. When court convened, Camperson’s lawyer moved for a mistrial because of the newspaper story. The trial court questioned the jurors, three of whom acknowledged having seen the article. These three jurors were then questioned individually, out of the hearing of the remaining members of the panel. Two said they had read the article; the third juror had not read the article but had stopped as soon as he realized it pertained to the case then on trial before the jury of which he was a part. Although all three jurors insisted that they could nevertheless decide the case fairly on the evidence which they would hear in the courtroom, the trial court excused the two who had read the article and replaced them with alternate jurors. On appeal, Camperson argues that the court erred when it refused to grant a mistrial.
 

 The leading case in Pennsylvania on prejudicial publicity occurring during a trial is
 
 Commonwealth v. Bruno,
 
 466 Pa. 245, 352 A.2d 40 (1976). From this, we glean the following general principles:
 

 
 *361
 
 The procedure to be followed to ensure a fair trial in the face of prejudicial publicity is clearly within the sound discretion of the trial court. Because the choice of procedure involves the balancing of fundamental rights — the defendant’s right to a fair trial before an impartial jury and the rights associated with a free press — this discretion must be exercised with care. See
 
 Sheppard v. Maxwell,
 
 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966);
 
 Estes v. Texas,
 
 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965);
 
 Irvin v. Dowd,
 
 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961);
 
 Commonwealth v. Pierce,
 
 451 Pa. 190, 303 A.2d 209, cert. denied, 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973).
 

 The preferred procedure when highly prejudicial material is publicized during the trial and the jury is not sequestered is to question the jurors individually, out of the presence of other jurors. See
 
 United States v. Schrimsher,
 
 493 F.2d 848, 854 (5th Cir.1974);
 
 Mares v. United States,
 
 383 F.2d 805, 809 (10th Cir.1967);
 
 Margoles v. United States, supra
 
 [407 F.2d 727] at 737 [(7th Cir.1969) ]; ABA Standards Relating to Fair Trial and Free Press §§ 3.5(e), (f)
 
 (Com
 
 mentary). However, questioning jurors as a group or giving special precautionary instructions may be a sufficient precaution depending on the facts of the particular case. See e.g.,
 
 United States v. Schrimsher, supra; Margoles v. United States, supra.
 

 See also:
 
 Commonwealth v. Crispell,
 
 530 Pa. 234, 608 A.2d 18 (1992).
 

 In the instant case, the trial court had failed to give the jury any precautionary instructions regarding newspaper publicity on the day prior to the appearance of the newspaper story. After the story had appeared, however, the jurors were examined, and it was determined that three had seen the article and two had read it. These three jurors were examined by the court, and defense counsel was also allowed to examine them. The two who had read the article were excused and
 
 *362
 
 replaced by alternate jurors. The third, the court found, was unaware of the contents of the article.
 

 The remaining jurors were then assembled and cautioned that they were to draw no inferences from the fact that two of their number had been excused. They, in turn, assured the court that they would hear the evidence impartially.
 

 Under these circumstances, we are persuaded that the trial court did not abuse its discretion and that appellant was not deprived of a fair trial.
 

 II.
 

 A motion to suppress evidence had previously been litigated in the Chester County action and had been decided adversely to appellant. When a similar motion to suppress evidence came before the trial court in the instant action, the court refused to relitigate the suppression issues in the absence of new evidence. Instead, appellant was permitted to make a part of the record the notes of testimony taken in Chester County as well as the findings and conclusions of the Chester County Court of Common Pleas. The proceedings in Chester County, therefore, are presently available for appellate review in this case.
 

 The trial court’s ruling was consistent with the decision of the Supreme Court in
 
 Commonwealth v. Lagana,
 
 510 Pa. 477, 509 A.2d 863 (1986). There, the Court was faced with two prosecutions in the same county arising out of a single search and seizure. The Supreme Court held that a decision by a suppression judge in the first prosecution could be incorporated into the record of the second hearing and, with new evidence previously unavailable, if any, could be reviewed on appeal. The Court said:
 

 In the present context we believe that some limited form of collateral estoppel is dictated, since it would have the beneficial effect of discouraging the relitigation of the same issues based on the same evidence, while at the same time preventing judges of equal jurisdiction from entering diverse rulings on the same evidence. However, these bene
 
 *363
 
 fits do not offset the potential negative impact of perpetuating an erroneous ruling.
 

 The solution for this dilemma is to have the ruling of the first suppression hearing incorporated into the record of the second hearing, and to allow review of the first decision on appeal as if it had been entered anew.
 

 Thus, in those instances where two prosecutions arise out of a single search and/or seizure, a decision by a suppression judge during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution. The party against whom this decision is being offered may offer any new evidence which was previously unavailable.
 
 See generally
 
 Pa.R.Crim.P. 323(j). Absent such new evidence the suppression judge in the second prosecution must adopt the findings and conclusions of the first judge, and incorporate them into the record. Thereupon, the party against whom the first decision is offered may have the validity of the decision reviewed on appeal.
 

 Id.
 
 at 483, 509 A.2d at 866 (footnote omitted). See also and compare:
 
 Commonwealth v. Iverson,
 
 358 Pa.Super. 1, 516 A.2d 738 (1986).
 

 Although
 
 Lagaña
 
 involved separate actions before different judges of the same court, its teaching is equally applicable to separate cases before courts of equal jurisdiction in different counties of this Commonwealth. Because
 
 Lagaña
 
 was followed by the trial court in the instant case, we find no error in the procedure which it adopted.
 

 III.
 

 We must now review the proceedings in the Chester County courts to determine whether that court properly refused to suppress evidence used against appellant during the trial in Montgomery County. Appellant contends that the warrant to search his residence (1) was not supported by probable cause and (2) violated the rule governing nighttime searches and his privacy interests.
 

 
 *364
 
 In
 
 Commonwealth v. Singleton,
 
 412 Pa.Super. 550, 603 A.2d 1072 (1992), the Superior Court observed:
 

 The courts in this Commonwealth employ a “totality of the circumstances” test, as enunciated in
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for determining the existence of probable cause for the issuance of a search warrant. See:
 
 Commonwealth v. Gray,
 
 509 Pa. 476, 503 A.2d 921 (1985). See also:
 
 Commonwealth v. Johnston,
 
 515 Pa. 454, 468, 530 A.2d 74, 80-81 (1987);
 
 Commonwealth v. Flaherty,
 
 400 Pa.Super. 397, 401-402, 583 A.2d 1175, 1177 (1990);
 
 Commonwealth v. Echevarria,
 
 394 Pa.Super. 261, 265, 575 A.2d 620, 622 (1990);
 
 Commonwealth v. Silverman,
 
 373 Pa.Super. 274, 277, 541 A.2d 9, 10 (1988),
 
 appeal dismissed,
 
 522 Pa. 510, 564 A.2d 160 (1989). This test was summarized by the Superior Court in
 
 Commonwealth v. Carlisle,
 
 348 Pa.Super. 96, 501 A.2d 664 (1985),
 
 affirmed,
 
 517 Pa. 36, 534 A.2d 469 (1987), in the following manner:
 

 The magistrate’s determination that probable cause existed must be given deference.
 
 Illinois v. Gates,
 
 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 547 (1983);
 
 Commonwealth v. Corleto,
 
 328 Pa.Super. 522, 528, 477 A.2d 863, 866 (1984). “[A] magistrate is not required to find a prima facie showing of criminal activity but rather the probability of criminal activity. While the inquiry is restricted to the four corners of the affidavit, the affidavit is to be interpreted in a common-sense and realistic fashion.”
 
 Commonwealth v. Gray,
 
 322 Pa.Super. 37, 46, 469 A.2d 169, 173 (1983) (citations omitted). “The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.”
 
 Commonwealth v. Miller,
 
 334 Pa.Super. 374, 382, 483 A.2d 498, 501-502 (1984), quoting
 
 Illinois v. Gates, supra
 
 462 U.S. at 238, 103 S.Ct. at 2332,
 
 *365
 
 76 L.Ed.2d at 548. See also:
 
 Commonwealth v. Gray, supra
 
 322 Pa.Super. at 46-47, 469 A.2d at 173.
 

 Id.
 
 348 Pa.Super. at 100, 501 A.2d at 666.
 

 On appeal, “[t]he duty of a reviewing court is to ensure that the magistrate had a ‘substantial basis for concluding that probable cause existed.’ ”
 
 Commonwealth v. Fromal,
 
 392 Pa.Super. 100, 114, 572 A.2d 711, 718 (1990), quoting
 
 Illinois v. Gates, supra,
 
 462 U.S. at 238-239, 103 S.Ct. at 2332-2333, 76 L.Ed.2d at 548. See also:
 
 Commonwealth v. Gray, supra,
 
 509 Pa. at 484, 503 A.2d at 925. “[A] trial court’s determination of probable cause is accorded the utmost deference on appeal.”
 
 Commonwealth v. Potter,
 
 350 Pa.Super. 61, 67, 504 A.2d 243, 246 (1986).
 

 Id.
 
 at 551-553, 603 A.2d at 1072-1073. See also:
 
 Commonwealth v. Baker,
 
 532 Pa. 121, 126-127, 615 A.2d 23, 25 (1992);
 
 In Interest of Bond,
 
 434 Pa.Super. 303, 306, 643 A.2d 106, 108 (1994);
 
 Commonwealth v. Zelasny,
 
 430 Pa.Super. 585, 590-591, 635 A.2d 630, 632-633 (1993);
 
 Commonwealth v. Murphy,
 
 427 Pa.Super. 578, 580-581, 629 A.2d 1020, 1021 (1993).
 

 The affidavit presented to the magistrate in support of the request for a search warrant in this case recited the purchases of methamphetamine from Wynn and Camperson and also that Wynn had observed the manufacture of methamphetamine in Camperson’s residence. The fact that methamphetamine had been observed during its manufacture in Camper-son’s residence and the fact that the methamphetamine which was to be supplied to Wynn for resale was in Camperson’s possession at his residence while under police surveillance were sufficient to establish probable cause for believing that contraband would be found in Camperson’s residence. Therefore, there is no merit in appellant’s contention that the warrant was unsupported by probable cause. See:
 
 Commonwealth v. Eicher, 413
 
 Pa.Super. 235, 605 A.2d 337 (1992),
 
 allocatur denied,
 
 533 Pa. 598, 617 A.2d 1272 (1992);
 
 Commonwealth v. Davis,
 
 407 Pa.Super. 415, 595 A.2d 1216 (1991),
 
 allocatur denied,
 
 530 Pa. 630, 606 A.2d 900 (1992);
 
 Commonwealth v. Macolino,
 
 336 Pa.Super. 386, 485 A.2d 1134 (1984).
 

 
 *366
 
 IV.
 

 Following appellant’s arrest, two police officers went to appellant’s residence, let themselves in, secured the premises, and waited for a warrant to search. They did not then search for contraband. A warrant was issued at 10:00 p.m. and executed at 10:30.
 

 The original entry of appellant’s residence by police was made without consent and without a warrant. This was illegal. The search was conducted, however, and the evidence was seized only after a warrant to search had been issued and duly executed. The evidence found and seized pursuant to warrant, therefore, was independent of the initial, illegal conduct by the police. Such evidence was not subject to suppression and was admissible against appellant by the prosecution. See:
 
 Murray v. United States,
 
 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988);
 
 Segura v. United States,
 
 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984);
 
 Commonwealth v. Ariondo,
 
 397 Pa.Super. 364, 580 A.2d 341 (1990),
 
 allocatur denied, 527
 
 Pa. 628, 592 A.2d 1296 (1991).
 

 Appellant also challenges the sufficiency of the cause for a nighttime search. Pa.R.Crim.P. 2003(e) requires “reasonable cause” for a search conducted after 10:00 p.m. This, it has been held, requires a showing that the search cannot wait until morning.
 
 Commonwealth v. Mourar,
 
 332 Pa.Super. 258, 261, 481 A.2d 352, 353 (1984). Here, a nighttime search was authorized by the issuing authority, but appellant argues that no reason was shown for not allowing the search to be delayed until morning.
 

 We find it unnecessary to make this review, for even if reasonable cause for a nighttime search were not included in the affidavit, the rule does not per se require suppression of the evidence seized by police. See:
 
 Commonwealth v. Young,
 
 524 Pa. 373, 572 A.2d 1217 (1990);
 
 Commonwealth v. Gentile,
 
 429 Pa.Super. 297, 632 A.2d 573 (1993);
 
 Commonwealth v. Johnson,
 
 315 Pa.Super. 579, 462 A.2d 743 (1983). See also:
 
 Commonwealth v. Mason,
 
 507 Pa. 396, 490 A.2d 421 (1985). The violation of the rule, if any, was technical; and appellant,
 
 *367
 
 who had earlier been arrested and placed in police custody, was not disadvantaged thereby. Such a technical violation did not require suppression of the evidence seized by the police pursuant to the warrant.
 

 V.
 

 Prior to trial, appellant moved in limine to prevent the Commonwealth from using evidence of the drugs found in his residence or of any criminal activities in Chester County. Even if this evidence were relevant, appellant argued, its prejudice outweighed any relevant information which the jury might otherwise glean therefrom. The trial court denied appellant’s motion in limine, and the evidence was introduced against appellant at trial. Appellant contends that this was error.
 

 At trial, it was the contention of the defense that Brian Wynn, having been arrested by police, falsely attempted to portray appellant as the supplier in an attempt to receive lenient treatment. The defense contended that, in fact, it had been Wynn who was the major drug supplier and that it had been Wynn who rented the house in St. Peter’s Village for use as a drug distribution center. Appellant, it was suggested, had lived at this residence only because he had been unable to obtain a place to live on his own. To this end, the defense introduced evidence that Wynn had been the named lessee for the premises; and a defense witness testified that Wynn had sold or given him marijuana on numerous occasions and that he had personally observed Wynn selling both marijuana and methamphetamine on several occasions. This evidence was intended to show, according to appellant, that there had been no agreement between him and Wynn for Wynn to sell methamphetamine on December 1 and 6, 1989. Any scheme to distribute methamphetamine, it was contended, had been by Wynn and did not include appellant.
 

 In order to establish the existence of a conspiracy between Wynn and appellant to distribute methamphetamine on December 1 and 6, 1989, the Commonwealth introduced evidence that, on December 7, 1989, appellant had agreed to furnish
 
 *368
 
 Wynn with one half pound of methamphetamine. It was later on the same day that appellant had been stopped by police officers while en route to the pre-arranged meeting place. Appellant had then had in his possession the half pound of methamphetamine which he had agreed to provide to Wynn. He had also had in his possession the $3500 which Wynn had allegedly given him as the proceeds of the sale which had taken place on December 6,1989. When police had attempted to stop him, appellant fled. Later, when they had searched the home occupied by appellant, police discovered additional methamphetamine and equipment used to process methamphetamine. All of this evidence tended to refute appellant’s defense and identify appellant as the supplier of methamphetamine to Wynn on December 1 and 6, 1989. It also tended to demonstrate an intent on the part of appellant to distribute methamphetamine. The trial court did not err when it allowed this evidence to be introduced. Cf.
 
 Commonwealth v. Matthews,
 
 415 Pa.Super. 306, 609 A.2d 204 (1992),
 
 allocator denied,
 
 533 Pa. 658, 625 A.2d 1192 (1993).
 

 The trial court also gave the jury cautionary instructions. The court said:
 

 ... “You have heard evidence tending to prove that Stephen Camperson was involved in other misconduct for which he is not on trial. I am speaking of the testimony to that which allegedly occurred on December 7, 1989.
 

 “This evidence is before you for a limited purpose, that is, for the purpose of tending to show intent and identity. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that Stephen Camperson is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. If you And Stephen Camperson guilty, it must be because you are convinced by the evidence that he committed the crimes charged and not because you believe he is wicked or committed some other misconduct.”
 

 The trial court did not abuse its discretion. Appellant has no basis for complaint.
 

 
 *369
 
 A contrary result is not mandated by the Superior Court’s decision in
 
 Commonwealth v. Camperson,
 
 417 Pa.Super. 280, 612 A.2d 482 (1992),
 
 allocatur denied,
 
 533 Pa. 642, 622 A.2d 1374 (1993). In that case, Camperson was to be tried for possession of the drugs found in his residence following arrest. The trial court ruled, in limine, that the prosecution would not be allowed to introduce evidence of Camperson’s prior drug activity with Wynn or the circumstances of the high speed chase on which Camperson had led police prior to his arrest. On appeal, the Superior Court held that the court had erred when it excluded evidence of Camperson’s relevant drug transactions but that it had not abused its discretion by excluding evidence of the facts surrounding the high speed chase which had resulted in Camperson’s conviction for recklessly endangering another person. The trial court could properly hold, the Superior Court said, that the high speed chase was irrelevant (and prejudicial) on the issue of Camper-son’s guilt of possessing contraband subsequently found in his residence.
 

 In the instant case, appellant was being tried for his complicity in drug transactions which had occurred prior to his attempt to avoid arrest by flight. His defense, moreover, was that he had been an innocent bystander and that Wynn alone had participated in the transactions in Montgomery County. Under these circumstances, appellant’s drug transactions and also his attempt to avoid arrest by police were relevant to show identity of the supplier and his own guilty knowledge. See:
 
 Commonwealth v. Williams,
 
 532 Pa. 265, 615 A.2d 716 (1992);
 
 Commonwealth v. Lark,
 
 518 Pa. 290, 543 A.2d 491 (1988);
 
 Commonwealth v. Banks,
 
 513 Pa. 318, 521 A.2d 1 (1987),
 
 cert. denied, Banks v. Pennsylvania,
 
 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987);
 
 Commonwealth v. Hoke,
 
 381 Pa.Super. 70, 552 A.2d 1099 (1989);
 
 Commonwealth v. Smith,
 
 380 Pa.Super. 619, 552 A.2d 1053 (1988),
 
 appeal denied,
 
 525 Pa. 581, 575 A.2d 112 (1990).
 

 VI.
 

 At trial, appellant requested that the trial court give a missing witness instruction to the jury because of the prosecu
 
 *370
 
 tion’s failure to call Sherry Wynn, the wife of Brian Wynn, and Donald Theisan. The trial court denied the request, and appellant contends this was error.
 

 As a general rule, “[w]hen a potential witness who is not called is available to only one of the parties and can provide important testimony which is not merely cumulative, the jury may infer that the witness’ testimony would have been unfavorable to the controlling party.”
 
 Commonwealth v. Berry,
 
 355 Pa.Super. 243, 252, 513 A.2d 410, 414 (1986). See:
 
 Commonwealth v. Manigault,
 
 501 Pa. 506, 510-511, 462 A.2d 239, 241 (1983);
 
 Commonwealth v. Jones,
 
 455 Pa. 488, 495, 317 A.2d 233, 237 (1974);
 
 Commonwealth v. Boyd,
 
 356 Pa.Super. 302, 306, 514 A.2d 623, 625 (1986),
 
 allocatur denied,
 
 515 Pa. 618, 531 A.2d 427 (1987);
 
 Commonwealth v. Whyatt,
 
 327 Pa.Super. 491, 500, 476 A.2d 374, 378 (1984). The rule has no application, however, unless the witness can provide material testimony. Where the testimony of a witness is comparatively unimportant, cumulative or inferior to other testimony already presented, such an inference cannot be drawn. Here, it has not been shown that Sherry Wynn had material testimony, and the testimony of Donald Theisan, if he was available to testify and if he had information relevant to the charges against appellant, was inferior to the information available to and testified to by Brian Wynn and John Murray. The trial court did not err by refusing a missing witness charge.
 

 VII.
 

 For his participation in the sale of December 6, 1989, the trial court imposed on appellant a sentence of imprisonment for not less than eight (8) years nor more than sixteen (16) years. Appellant contends that such a sentence was illegal because it exceeded the maximum sentence of ten (10) years allowed by Section 13(f)(1.1) of The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64, as amended, 35 P.S. § 780 — 113(f)(1.1). We agree.
 

 Appellant was sentenced under 18 Pa.C.S. § 7508(a)(4)(iii), which provides for a mandatory minimum term of imprison
 
 *371
 
 ment of eight (8) years, and the provisions of 42 Pa.C.S. § 9756(b), which provide that a sentencing court “shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.” As we have observed, however, the maximum sentence allowed by The Controlled Substance, Drug, Device and Cosmetic Act is ten (10) years.
 

 A similar legislatively created conundrum was before the Supreme Court in
 
 Commonwealth v. Bell, 537
 
 Pa. 558, 645 A.2d 211 (1994). Although the conflict there pertained to sentences for possession of marijuana with intent to deliver, the confusion arose from similar inconsistencies in the statutory provisions pertaining to sentencing. The Court’s holding, therefore, is equally applicable to offenses involving methamphetamine.
 

 The Court determined that the provisions of 18 Pa.C.S § 7508 and the provisions contained in The Controlled Substance, Drug, Device and Cosmetic Act could “be consistently applied in regards to terms of incarceration.”
 
 Commonwealth v. Bell, supra
 
 at 569, 645 A.2d at 217. The proper term of imprisonment was held to be the range between the mandatory minimum provided by Section 7508 and the statutory maximum provided by The Controlled Substance, Drug, Device and Cosmetic Act.
 
 [1]
 
 “The fact that this construction [was] contrary to § 9756(b)’s minimum-maximum rule,” the Court said, “[was] of no constitutional moment.”
 
 Id.
 
 at 571, 645 A.2d at 218. By its own terms, Section 7508 applied “[notwithstanding any other provisions of this or any other act to the contrary.”
 

 Under 18 Pa.C.S § 7508(a)(4)(iii), therefore, appellant was properly sentenced to a minimum term of imprisonment for not less than eight years. Pursuant to 35 P.S. § 780-113(f)(1.1), however, appellant should have been sentenced to a
 
 *372
 
 maximum term of imprisonment of not more than ten years. When the trial court imposed a maximum sentence of sixteen (16) years, it imposed a sentence which exceeded the maximum allowed by law.
 

 The judgment of sentence at 7245.2-1990 is vacated, and that case is remanded to the trial court for resentencing. The remaining judgments of sentence are affirmed. Jurisdiction is not retained.
 

 [1]
 

 . Thus, "Section 7508(a)(l)(ii)’s mandatory minimum sentence of three years read together with [35 P.S. § 780-] 113(0(2)’s maximum five year sentence results in a three to five year sentence for individuals convicted of possession with the intent to deliver between ten and fifty pounds of marijuana.”
 
 Commonwealth v. Bell, supra
 
 at 569, 645 A.2d at 217 (footnote omitted).