# Commonwealth v. McKown

*Carolyn Larrabee,* for Commonwealth.
*Jason S. Dunkle,* for defendant.

KISTLER, *J.,* April 28, 2009—Presently before this court are the omnibus pretrial motions, in the form of a motion to suppress and motion to quash warrant, filed by Hobson L. McKown (defendant). After having re-

viewed the briefs submitted on these motions, the defendant's omnibus pretrial motions are hereby denied for the following reasons.

## STATEMENT OF FACTS

(1) Defendant appeared at Central Court in the Centre County Courthouse on September 10, 2008, for a preliminary hearing on a separate criminal action than the one presently before the court.

(2) Upon the conclusion of the preliminary hearing, the Commonwealth requested that the court modify defendant's bail and prohibit defendant from possessing any firearms.

(3) Magisterial District Judge Leslie A. Dutchcot modified defendant's bail to include a special condition that he was not able to possess any firearms.

(4) Defendant proceeded to the sheriff's department to make arrangements to comply with the surrender of his firearms.

(5) Upon learning that sheriff's deputies would accompany defendant into his home in order to secure the firearms, defendant attempted to negotiate an alternate time or way in which the weapons could be surrendered.

(6) The sheriff's deputies refused to wait until a later time in which to enforce the order and explained to defendant that as the surrender of his firearms was a requirement of his bail, failure to comply with this condition would likely result in his bail being revoked.

(7) Defendant agreed to comply with his bail conditions and accompany the sheriff's deputies to his residence to retrieve the firearms.

(8) Defendant's residence is a mobile home trailer divided into two living units.

(9) Upon arriving at defendant's residence, the sheriff's deputies were met by a middle-aged female who the police later discovered was defendant's mother. The sheriff's deputies asked the female to stay outside the residence while they collected the guns.

(10) As the defendant and sheriff's deputies were walking towards the residence, defendant began to once again ask the sheriff's deputies if they could make an alternate arrangement to collect the firearms and slowed his pace as the group approached the residence.

(11) At approximately 30 feet from the residence, defendant stopped walking and stood still, looking extremely nervous.

(12) At this moment, the sheriff's deputies became concerned that there was something in the trailer which was dangerous.

(13) The sheriff's deputies asked defendant if there was anything in the residence that could harm or hurt them. Defendant responded that there was not but the sheriff's deputies remained unconvinced.

(14) Based on defendant's nervous behavior the officers handcuffed defendant and retrieved the house key from the defendant's left front pocket.

(15) Deputy Albright walked up the steps and opened the door a few inches in order to peer inside.

(16) Deputy Albright observed a sign which read, "I do not consent to this search." Stacked near the sign were six ammunition cans.

(17) Upon viewing the ammunition cans, Deputy Albright opened the door further and observed a computer desk with a set of wire cutters, voltage meter, circuit boards, phone cords and hard drives. There was also another ammunition can next to the door and three mouse traps stacked on top of each other on the kitchen counter.

(18) Deputy Albright had seven years experience as a K-9 handler of an explosive detection dog and 200+ hours of explosives and IED (improvised explosive device) training. He recognized the aforementioned objects as components used in the construction of explosives or IEDs.

(19) Deputy Albright backed out of the residence and contacted the local bomb tech, Officer White.

(20) Shortly before Officer White arrived, defendant was placed in the back of a police cruiser while handcuffed and transported to a holding cell.

(21) Officer White agreed that if he were to encounter any IEDs or booby traps he would render them safe and contact the appropriate federal employees and obtain a search warrant for IED components and explosives.

(22) Officer White then entered the residence without a warrant.

(23) During the search, Officer White observed items which are used to manufacture components of IEDs.

(24) In addition to searching the open areas for bombs, Officer White opened kitchen cabinets in order to allow the officers to retrieve the firearms in safety. Officer White opened these areas because the size of an IED could be as small as a thumb.

(25) In a kitchen cabinet were several shipping envelopes and a cloth bag. Officer White looked inside the bag and recognized a pipe which he believed was used to smoke marijuana. In one of the envelopes, Officer White felt what he believed to be another pipe used to smoke marijuana. Officer White also observed a green substance which he believed was marijuana. The substance was later determined to be oregano.

(26) Officer White immediately notified the other officers of what he found and then completed his search of the area for explosives. No items were found which presented a danger to law enforcement.

(27) Based on Officer White's observations, Detective Martin obtained a search warrant for the pipe and substance which was believed to be marijuana. The pipe was later determined to contain marijuana residue.

## DISCUSSION

Defendant argues that the evidence obtained from his residence should be suppressed because law enforcement officials illegally entered the residence without a warrant and conducted a search in violation of both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Warrantless searches and seizures are unreasonable per se, unless conducted pursuant to a specifically established and well-

delineated exception to the warrant requirement. *Commonwealth v. Key,* 789 A.2d 282, 287 (Pa. Super. 2001).

## I. *Sheriff's Deputies' Initial Entry*

As a threshold matter, this court determines that "conditions of bail" are not the equivalent of a court order authorizing law enforcement to take custody of a defendant's firearms. The key distinction being, had defendant chosen not to abide by the conditions of bail, law enforcement would not have then been able to proceed to the defendant's home and collect the firearms. It is not the duty of law enforcement to force defendant to carry out the terms of his bail. For example, once a defendant agrees to post a sum of money as bond, it is not then the duty of law enforcement to withdraw money from that person's bank account or place a mortgage on his residence to make sure that condition of bail is satisfied. Rather, it is the duty of law enforcement to bring the defendant before the court upon a showing that defendant failed to comply with a condition of bail.

In the present case, defendant had the choice of either surrendering his firearms or having his bail revoked and being sent to prison. Law enforcement certainly had the authority to make sure that the search and surrender of the firearms was conducted in a reasonable and safe manner. However, law enforcement does not have the authority to enter defendant's residence and seize his firearms if defendant refuses to abide by this condition of bail.

Although the court determines that police entry of a residence, pursuant to a bail modification order for the

purpose of securing firearms amounts to a search, the police did not need a warrant in this instance because defendant gave the police his express consent to enter the residence and seize any firearms. (N.T. 1/8/2009, p. 10, ll. 14-16.) Based on the totality of the circumstances, the court determines that the Commonwealth has proven by clear and convincing evidence that consent was freely given. The deputy at the sheriff's office informed defendant that he had a choice between refusing to abide by the conditions of his bail and risk having bail revoked, or permitting the officers to accompany him into his residence and retrieve the firearms. Therefore, the court determines that the warrantless search of defendant's residence for the purpose of securing firearms was not in violation of defendant's right to be free from unreasonable searches.

Having established that the police had consent to enter the premise to search for firearms, the court must next consider whether the police officer's subsequent search of the apartment for explosives and seizure of marijuana pipes was proper. Although defendant consented to a search of his residence for firearms, the defendant never consented to a search of his apartment for any explosive devices or narcotics. This distinction is significant because a party consenting to a warrantless search may limit his or her consent to defined areas. *Commonwealth v. Yedinak,* 450 Pa. Super. 352, 358, 676 A.2d 1217, 1220 (1996). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (citation omitted) Ap-

plying this standard, the court determines that defendant's consent only extended to places in which a firearm could be stored. A reasonable person in defendant's situation would likely understand that a search for firearms would include only areas or containers in which a firearm could be stored. The key question therefore is whether the envelope or cloth bag was of sufficient size to hold a firearm.

Unfortunately, the court is constrained by the testimony elicited by the Commonwealth which failed to set before the court the size of the containers searched. In an evidence suppression hearing, the Commonwealth has the burden of both production and persuasion, and must prove by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 581(H). Therefore, the court is constrained to find that the Commonwealth has failed to show that defendant's consent extended to the cloth bag or envelope.

Although defendant's consent may not have extended to the two containers in which the marijuana pipes were found, it did, however, provide the police with a lawful reason to enter the residence. As such, the sheriff's deputies initial entry into the residence was legal.

## II. *Search of the Residence for Explosives*

Having determined that defendant consented to search the residence for firearms, the court must next consider whether there were exigent circumstances which would permit the police to search areas of the residence which could not have contained a firearm.

Acting pursuant to the consent provided by the defendant, Deputy Albright opened the door of the residence a few inches to peer inside. Deputy Albright observed objects which he believed, pursuant to his training in explosive devices, were used to manufacture explosives or IEDs. Fearing that the residence might contain explosives or traps, Deputy Albright contacted the local bomb tech, Officer White. For these reasons, the court believes that Deputy Albright's decision to call a bomb tech and have him search for explosives was based on probable cause. The court makes this determination based on defendant's nervous behavior and Deputy Albright's inspection of the inside of the residence coupled with his seven years of experience as a K-9 handler of an explosive detection dog. Therefore the court must determine whether Officer White's search of the residence was conducted pursuant to exigent circumstances which would have excused the need for a search warrant.

The test to determine whether exigent circumstances exists is as follows:

"In determining whether exigent circumstances exist, a number of factors are to be considered:

"(1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.,* whether it was made at night. These factors are to be balanced against one an-

other in determining whether the warrantless intrusion was justified.

"Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

"*Id.* [Commonwealth v. Roland, 595] at 600, 637 A.2d [269] at 270-71[1994] (quotations and citations omitted); *Commonwealth v. Bostick,* 958 A.2d 543, 557 (Pa. Super. 2008). Moreover, this court has observed that, 'the Commonwealth must present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent, [] and that the exigency was in no way attributable to the decision by police to forego seeking a warrant.'" *Commonwealth v. Lee,* 972 A.2d 1 (Pa. Super. 2009) (citing *Commonwealth v. Rispo,* 338 Pa. Super. 225, 231, 487 A.2d 937, 940 (1985) (quoting *Commonwealth v. Davis,* 270 Pa. Super. 202, 206, 411 A.2d 250, 252 (1979))).

The court believes that the facts of this case are unique for a number of reasons. The first distinguishing fact is that unlike many cases involving exigent circumstances, the defendant in this case was already technically in custody as he was handcuffed and placed in the back of a police car after Deputy Albright peered into the residence. This fact clearly weighs heavily against the Commonwealth as there was no likelihood of flight or danger

to the officers coming directly from the defendant. However, because the defendant had already consented to a search of his residence for firearms, albeit limited to areas or containers which could hold firearms, the intrusion was minimal. This factor weighs heavily in favor of the Commonwealth pursuant to the sixth and seventh factors. Finally, the court determines that the police officers acted without a warrant due to a reasonably perceived threat to officer and public safety. Explosives, by their very definition, are volatile and need not be within the reach of a defendant to be dangerous. A delay to secure a warrant could only have worked to increase the risk to officers at the residence and any members of the public who might come within proximity of the mobile home unit.

Weighing all the relevant factors, the court determines that the sheriff deputies had probable cause to believe that explosives may be present in the trailer and that exigent circumstances existed such that a search of all areas of the trailer in which explosives could be hidden was lawful. As a result, Officer White's discovery of two marijuana pipes, although beyond the scope of defendant's consent, was nonetheless lawful as it was done pursuant to exigent circumstances.

### III. *Best Evidence Rule*

At the hearing, this court overruled an objection by the defendant that Deputy Albright's testimony as to the contents of a court order issued by a district court magistrate should be inadmissible, as the writing itself would be the best evidence. See Pa.R.E. 1002. The court notes that, "When the contents of a document are not at issue

and the matter to be proved exists independently of the writing," the best evidence rule does not apply. *Commonwealth v. Harris,* 719 A.2d 1049, 1051 (Pa. Super. 1998). Here, the issue raised was whether a court order listing conditions of bail should constitute an order of the court such that the need for a warrant was unnecessary. The contents of the order were therefore not at issue. Furthermore, the decision of this court that a search pursuant to a bail modification order constitutes a Fourth Amendment search renders the issue moot.

### IV. *Motion To Quash Warrant—* *Lack of Probable Cause*

Defendant argues that the warrant was not supported by probable cause because the affidavit failed to include a basis of knowledge as to Officer White's training in identifying controlled substances and drug paraphernalia. Defendant relies on *Commonwealth v. Camperson,* 437 Pa. Super. 355, 650 A.2d 65 (1994) as the basis for the argument that an issuing authority must consider the "basis of knowledge of persons supplying hearsay information." However, a review of the underlying cases in which the *Camperson* court cited as authority for this rule reveals that this rule stems from determinations as to the reliability of informants. See *id.* at 364, 650 A.2d at 70 (quoting *Commonwealth v. Miller,* 334 Pa. Super. 374, 382, 483 A.2d 498, 501-502 (1984)). In the situation where a magistrate must make a determination as to probable cause to issue a warrant based on information supplied to law enforcement by an informant, it is clear that the issuance of the warrant hinges on the informant's "basis of knowledge."

In this case, the information was supplied by a police officer who relayed his findings to a detective. Although the "basis of knowledge" remains pertinent, it is not a defining factor as in the case with information provided by a citizen informant. It is therefore but one of the many factors which a magistrate must consider.

Having reviewed the affidavit, the court determines that the warrant was issued pursuant to probable cause. Defendant's motion to quash is hereby denied.

## ORDER

And now, April 28, 2009, the defendant's omnibus pretrial motions are hereby denied.