J-A14040-14

2014 PA Super 199

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
RODNEY SCOTT BOWMASTER, :
:
Appellant : No. 1925 MDA 2013

Appeal from the Judgment of Sentence of October 7, 2013
in the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000483-2012

BEFORE: FORD ELLIOTT, P.J.E., OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.: **FILED SEPTEMBER 17, 2014**

Rodney Scott Bowmaster (Appellant) appeals from the judgment of
sentence imposed following his October 7, 2013 convictions for weapons of
mass destruction, prohibited offensive weapons, recklessly endangering
another person,[1] possession of a designer drug, and multiple counts of
possession of a controlled substance with intent to deliver.[2]  After careful
review, we reverse the order denying Appellant's motion to suppress and
vacate his judgment of sentence.

On October 25, 2012, at approximately 2:10 in the morning,
Pennsylvania State Troopers Andrew Mincer and William Ritrosky received
information from burglary victim, Kristen Karchner (Karchner), that a

_____

[1] 18 Pa.C.S. §§ 2716(a), 908(a), and 2705, respectively.

[2] 35 P.S. §§ 780-113(a)(36), (a)(30), respectively.

* Retired Senior Judge assigned to the Superior Court

handgun stolen from her home was located in the shed behind Appellant's residence. Karcher related that her son observed the gun in the shed, and told her it was traded to pay off a debt. After receiving this information, Troopers Mincer and Ritrosky went immediately to Appellant's residence to investigate, arriving at approximately 3:15 A.M.

Appellant lived in a mobile home park. His trailer was situated perpendicular to the road. The door of the home, located on the side of the trailer, was accessible only by walking half the length of the building, through Appellant's yard. Appellant's yard was surrounded by a chain-link fence and closed gate. "Private Property" and "Beware of Dog" signs were posted on the fence. Upon arrival, the troopers observed the glow of lights and a television through a window immediately to the left of the door. The window had blinds, but was not completely closed due to the presence of a window fan. While Trooper Ritrosky knocked on the mobile home's door, Trooper Mincer peered through the window beside the door and was able to observe Appellant and another man sitting on a couch immediately under the window. Trooper Mincer watched Appellant rise from the couch to answer the door and the other man move quickly to the back of the trailer. After both men left the room, Trooper Mincer was able to observe a large knife, what he believed to be heroin packets on a coffee table, and a rifle in the corner of the room. Further, Trooper Mincer reported smelling a chemical smell consistent with burnt synthetic drugs.

After Appellant answered the door, Trooper Ritrosky explained why they were there. Trooper Mincer then asked Appellant whether anyone else was in the home. Appellant responded "no." Based on his earlier observations, Trooper Mincer performed a protective sweep of the trailer, during which he detained two adult individuals and one child, and observed a large knife, a rifle, and assorted packaged drugs in plain view. A search warrant was obtained. Following the execution of the warrant, the state police seized from Appellant's home various quantities of narcotics, various quantities of prescription medication, multiple scales, a number of laptop computers, three safes, various indicia of drug use and trafficking, as well as other contraband.

Appellant was arrested and charged with multiple crimes stemming from the search of his home. On July 15, 2013, Appellant filed a pre-trial motion to suppress the evidence seized by state police. On August 8, 2013, the trial court held a hearing on Appellant's motion. By opinion and order dated August 19, 2013, Appellant's motion was denied.

On August 26, 3013, Appellant proceeded to a stipulated bench trial. On August 30, 2013, Appellant was found guilty of the aforementioned offenses. On October 8, 2013, Appellant was sentenced to an aggregate term of seven years and nine months to sixteen years of incarceration. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant asks us to consider whether the trial court erred in denying his motion to suppress. Appellant's Brief at 8. Specifically, Appellant claims that the side yard of his home constituted the curtilage of his property; thus, the police viewed the interior of his home from an illegal vantage point. He further argues that there existed no exigent circumstances to support nighttime warrantless entry onto the curtilage of his property or Trooper Mincer's warrantless search of his home. Appellant's Brief at 12-15. The Commonwealth contends that the evidence was lawfully obtained, first arguing that the troopers did not violate the curtilage of Appellant's residence, nor did he have a reasonable expectation of privacy in the interior of his home when the shades were not drawn. Commonwealth's Brief at 2-3. The Commonwealth further argues that the observations of Trooper Mincer constituted exigent circumstances that justified the warrantless search. *Id.* at 3-5.

> Our analysis of this question begins with the presumption that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. If the trial court denies the motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Berkheimer*, 57 A.3d 171, 177 (Pa. Super. 2012) (*en banc*) (citations and quotations omitted).

Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1 § 8 of the Pennsylvania Constitution. *Commonwealth v. Lopez*, 609 A.2d 177, 178-179 (Pa. Super. 1992). These constitutional protections have been extended to the curtilage of a person's home. *Id.* at n. 1. In determining what constitutes "curtilage," we consider "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Commonwealth v. Johnson*, 68 A.3d 930, 936 at n. 3 (Pa. Super. 2013) (citation omitted).

The record establishes that Appellant's yard was fenced and gated at the time of the incident. N.T., 8/8/2013, at 11, 26-27; Defense Suppression Exhibits 1 and 2. The fence contained numerous signs which indicated that the area was off-limits to the general public. *Id.* Based on this evidence, we agree with Appellant that the side yard of his home constituted the curtilage of his property and was subject to a reasonable expectation of privacy. *See Commonwealth v. Gibbs,* 981 A.2d 274, 279 (Pa. Super. 2009) (holding that front porch did *not* constitute "curtilage" where there was no front yard

or other enclosed space preceding or surrounding the porch, the porch abutted the sidewalk, there was no gate blocking entry to the porch and nothing else that would indicate that it was closed to members of the general public). However, our inquiry does not end there; we must determine whether there were both probable cause and exigent circumstances to support the officers' warrantless entry onto Appellant's property.

It is well established that "probable cause alone will not support a warrantless search or arrest in a residence ... unless some exception to the warrant requirement is also present.... [A]bsent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, **even** where probable cause exists." ***Commonwealth v. Santiago***, 736 A.2d 624, 631 (Pa. Super. 1999) (citations omitted; emphasis in orginal). In ***Commonwealth v. Roland***, 637 A.2d 269 (Pa. 1994), our Supreme Court explained that "[i]n determining whether exigent circumstances exist, a number of factors are to be considered", such as,

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced

against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Id.* at 600, 637 A.2d at 270–71 (quotations and citations omitted).

In this case, a balancing of the **Roland** factors outlined above demonstrates a lack of exigency for a warrantless search of Appellant's property. Assuming the gravity of the offense of possession of a potentially stolen gun is high, the officers had no reason to believe the occupants of the home were aware of the officers' presence such that destruction of evidence, escape, or violence was imminent. More importantly, the time of day of the warrantless search weighs heavily in favor of Appellant's contention that the officers should have obtained a search warrant.

As an *en banc* panel of this Court recently explained,

[t]hat presumption [that a warrantless search is unreasonable] is buttressed where, as here, the search at issue is conducted in the dark of night. As observed by Mr. Justice Harlan, "[I]t is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home ..." **Jones v. United States**, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Indeed, "the fact that an entry is made at night raises particular concern over its reasonableness ... and may elevate the degree of probable cause required, both as implicating the suspect, and as showing that he is in the place entered." **Commonwealth v. Williams**, 483 Pa. 293, 396 A.2d 1177, 1180 (1979) (citing **Jones, supra**.). So palpable is that concern in this Commonwealth that our Supreme Court has

circumscribed even the issuance of warrants for probable cause, mandating that "(n)o search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search." Pa.R.Crim.P. 203(E). Clarifying the extent to which a magistrate may lawfully issue such warrants, this Court has expressly distinguished the showing of probable cause necessary for the issuance of daytime warrants from those to be served at night:

> The Rule is clear that probable cause is required for the issuance of a search warrant authorizing a daytime or nighttime search. However, due to the greater intrusion upon individual privacy occasioned by a nighttime search, some greater justification than that required for a daytime search must be shown. ***See*** Pa.R.Crim.P. [203(E) and Comment]. *Put simply, the affidavit for a warrant authorizing a nighttime search must show both probable cause and some reason why the search cannot wait until morning.*

***Commonwealth v. Baldwin***, 253 Pa. Super. 1, 384 A.2d 945, 948 (1978) (emphasis added). ***Accord Commonwealth v. Camperson***, 437 Pa. Super. 355, 650 A.2d 65, 70 (1994) (noting that the Rule of Criminal Procedure governing issuance of warrants for nighttime searches "requires a showing that the search cannot wait until morning").

***Berkheimer***, 57 A.3d at 178-179.

Instantly, there was no exigency or urgency established by the testimony presented that would support the Commonwealth's argument that this search could not wait until morning or until a warrant was procured. The record does not indicate when the Karchner's home was burglarized, or by whom, just that Karchner's son reported to her that an allegedly stolen gun was located in a shed on Appellant's property. Though the tip and belief that Appellant is in possession of a firearm arguably provide probable cause

to search the shed, and possibly Appellant's home, these factors do not outweigh the reality that no exigency existed to justify a warrantless nighttime search. Contrary to the Commonwealth's argument, the alleged observations of Trooper Mincer through the window cannot support the original search for the firearm, nor do they negate the officers' illegal entry onto Appellant's property.

As we have found that Appellant had a reasonable expectation of privacy in the curtilage of his home and the Commonwealth has failed to show exigent circumstances, we conclude that the troopers were required to obtain a search warrant before engaging in an investigation onto the curtilage of Appellant's property in the middle of the night. By failing to do so, they violated Appellant's constitutional rights to be free from unreasonable searches and seizures. As a result, the entry by police onto Appellant's property was illegal and all evidence seized in violation of his constitutional rights should have been suppressed.

Judgment of sentence vacated. Order denying Appellant's motion to suppress reversed. Case remanded for additional proceedings. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott, joins the opinion.

Judge Olson files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014