635 A.2d 630

COMMONWEALTH of Pennsylvania,

v.

Michael T. ZELASNY, Appellant.

Superior Court of Pennsylvania.

Submitted June 7, 1993.

Filed Dec. 15, 1993.

586

John E. Jones, III, Pottsville, for appellant.

Leo Breznik, Asst. Dist. Atty., Shenandoah, for Com., appellee.

Before OLSZEWSKI, KELLY and JOHNSON, JJ.

JOHNSON, Judge:

Michael Zelasny entered a guilty plea to possession of drugs with intent to deliver and to criminal conspiracy, subject to his right to appeal the denial of his earlier motion to suppress tangible evidence. On this appeal, we are asked to determine whether exigent circumstances arose sufficient to support a warrantless stop and search of a motor vehicle believed to be

involved in the transportation of controlled substances into the Commonwealth.

The trial court determined that probable cause to support issuance of the search warrant was lacking because the affidavit provided "no basis for the magistrate to conclude that drugs would be found in the vehicle at the time the warrant was issued." We agree. However, the trial court denied the suppression motion after further determining the arresting officers searched the involved motor vehicle under exigent circumstances. We are unable to find exigent circumstances and, accordingly, reverse the judgment of sentence and remand for a new trial at which the evidence seized on the authority of the defective warrant would be excluded.

The trial court's findings of fact follow:

1. During the Fall of 1990 and continuing into 1991, various police officers from different departments throughout Schuylkill County were working together as the Schuylkill County Drug Task Force in conjunction with agents from the Attorney General's Office.

2. In October of 1990, Chief George Pennington of the Kline Township Police Department, who was acting as field operations supervisor for the Task Force, was informed by Officer John Phillips of the Mahanoy City Police that there had been numerous complaints of drug activity involving the defendants. Officer George Woodward of the Tamaqua Police Department also informed the Task Force that he "had drug charges on Frank Zelasny in the past."

3. During that same period of time Agent Robert Bruce of the Attorney General's Office, who was working with the Task Force, received independent information from three separate confidential informants that the defendants were dealing heroin and that it was their common practice to drive to New York City to purchase quantities of heroin and then return to Schuylkill County with the drugs, primarily to the Mahanoy City area.

4. On January 11, 1991, another confidential informant advised Sergeant Robert Ravina of Kline Township, another

member of the Task Force, that the informant had purchased controlled substances from Frank Zelasny.

5. On January 24, 1991, at 8:00 p.m., Sergeant Ravina received an anonymous phone call during which the caller stated that the defendants were going to New York City the next day to purchase heroin and were taking orders from people for drugs. The caller further stated that they would be travelling in one of three vehicles, which the caller described along with their license plate numbers, and that the defendants would be leaving the next morning after picking up someone's money in McAdoo.

6. Based upon this information the Task Force set up surveillance on the morning of January 25, 1991, at 10:00 a.m. but observed nothing until 12:55 p.m. when they spotted a white Cadillac bearing Pennsylvania tags YRE–373, which was one of the vehicles described by the caller. The vehicle was carrying two unidentified white male occupants, and they followed the car through the Borough of McAdoo to the Consolidated Cigar Company located just outside of the Borough. They observed the vehicle approach the guard shack and park. After several minutes they saw another [un]identified white male approach the vehicle and speak briefly with the passenger. The vehicle drove back into McAdoo, stopped at a pharmacy and then left the Borough at about 2:20 p.m. The vehicle was followed as it continued out of Schuylkill County and onto Interstate 78 until it reached the New Jersey border, where surveillance was cut off.

7. Chief Pennington had independently observed the vehicle stopped at the cigar plant because he had earlier that day provided money to a confidential informant for the purpose of making a controlled purchase of drugs from the defendants, and he had been in a position to observe his informant approach the vehicle while it was stopped at the cigar plant and to see the informant give the money to Frank Zelasny while he and Michael Zelasny were sitting in the vehicle.

8. Although the Task Force officers did not follow the vehicle after it crossed into New Jersey, they were positioned at various points along the route so that they could follow if it returned the same way. The vehicle did return later that day and was again followed. Because of the limitations of their radio equipment, the officers following the vehicle could not inform Chief Pennington that it was returning until they had followed it all the way to the southern end of Schuylkill County where it was proceeding in a northwardly direction on Route 309. This radio message was not received by Chief Pennington until 7:45 p.m.

9. Having learned that the vehicle was already in Schuylkill County and returning on Route 309, the Task Force elected to stop the vehicle by faking a traffic accident so that they could stop all northbound traffic on Route 309 and thus intercept the suspect vehicle without arousing suspicion. At the same time the information received was called into Sergeant Ravina, who was back at the police station, so that he could prepare an affidavit and application for search warrant. Sergeant Ravina then contacted District Justice Andrew Zelonis, who issued the warrant for the search of the vehicle and any and all occupants at 8:00 p.m.

10. The defendant's vehicle arrived at the faked traffic accident at approximately 8:15 p.m. As it came to the front of the line of traffic the Task Force officers, about fifteen in number, some in uniform and some in plain clothes, converged on the vehicle and pulled both defendants from inside. They identified themselves as officers and informed the defendants that they were there to execute a search warrant.

11. In order to minimize danger and avoid further interference with traffic, the defendants and the vehicle were taken to the nearby Rush Township police station where the vehicle and defendants were searched. At that point the warrant was read to the defendants, and Frank Zelasny was given a copy.

12. During the search of the vehicle[,] seventy-three bags of heroin were found in a container under the front

seat of the vehicle on the passenger side. The defendants were then placed under arrest and searched, at which time a separate bag of heroin was found on Frank Zelasny.

Opinion, Baldwin, J., November 26, 1991, at 2–5.

On March 13, 1992, Zelasny pled guilty to charges of possession with intent to deliver a controlled substance and criminal conspiracy subject to his right to appeal the denial of his motion to suppress. A timely appeal was never filed. Zelasny then filed a petition pursuant to the Post Conviction Relief Act (P.C.R.A.), 42 Pa.C.S. § 9541 *et seq.*, alleging ineffectiveness of counsel for failing to file a timely suppression appeal. 42 Pa.C.S. § 9543(a)(2)(ii). After a hearing on December 3, 1992, the PCRA Court authorized Zelasny to file this appeal *nunc pro tunc.*

We agree with the distinguished trial court that there was no basis from which the issuing magistrate could conclude that drugs would be found in the vehicle at the time the warrant was issued. We are unable to agree that exigent circumstances existed, as found by the trial court, to support a warrantless search. We are also unable to agree with our learned colleague that the information recited in the affidavit "collectively demonstrated that there was a fair probability" that contraband would be lodged in the vehicle upon its re-entry into Schuylkill County. We do not find the reliability of the anonymous and confidential informants to be enough to offset the lack of factual averments placing both the Zelasny brothers and drugs in the white Cadillac at about 8:00 P.M. on January 25, 1991, when the search warrant was issued.

■ Mr. Justice Papadakos, speaking for the Supreme Court of Pennsylvania, recently reiterated the principles to be applied in reviewing the sufficiency of a search warrant affidavit:

As we have often indicated, the legal principles applicable when reviewing the sufficiency of an affidavit to determine whether it establishes the probable cause necessary for the issuance of a warrant are well established. Before an issuing authority may issue a constitutionally valid search

warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner. It must also be remembered that probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and that deference is accorded to a magistrate's finding of probable cause....

Hearsay information is sufficient to form the basis of a warrant so long as the magistrate has been provided with sufficient information to make a "neutral" and "detached" decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding that probable cause existed."

*Commonwealth v. Baker,* 532 Pa. 121, 126–27, 615 A.2d 23, 25 (1992) (citations omitted). The probable cause arising from the assertions within the affidavit must be sufficient to permit a reasonable conclusion that contraband will be found in a particular place, that is, where the informant said it would be, *and* that this belief existed at the time the warrant issued. *Commonwealth v. Flaherty,* 400 Pa.Super. 397, 403, 583 A.2d 1175, 1178 (1990).

■ Even assuming the reliability and veracity of the informants included in the affidavit here under review, there is not enough information included within the affidavit to permit a reasonable belief that drugs would be found in the vehicle at the time the warrant issued. The affidavit, in its entirety, provides:

1. In that your affiant is employed by the Schuylkill County Drug Task Force and currently assigned to Schuylkill County. As such I am empowered to conduct investigations of the various laws of the Commonwealth, including Act # 64, The Pa. Controlled Substance, Drug, Device and Cosmetic Act of 1972. During the course of such investiga-

tions, I am authorized to apply for, obtain, and serve Search Warrants, make seizures, and make arrests.

2. Your affiant has been a law enforcement officer since 1987, and as such, has been involved in numerous criminal investigations into violations of the drug laws. I have previously obtained Search Warrants which have resulted in the seizure of illegal drugs and documents, and the arrest of numerous drug law violators. I have received training in the investigations and techniques from the Penna. Office of Attorney General[,] [t]he U.S. Drug Enforcement Administration and the Penna. State Police.

3[.] On January 11, 1991, your affiant spoke to a reliable confidential police informant who related information to members of the Schuylkill County Drug Task Force. Such information has included the names of several area drug dealers who are known to your affiant as Glenn Lawson, Anthony Rish, Alan Rish, Anna Noccie just to mention a few. This confidential informant has made statements against his own penal interests admitting that he/she has made purchases of controlled substances from the subject Frank Zelasny. Furthermore, this informant is providing information in other drug investigations that has [included] the names of several area drug dealers, their addresses, phone numbers, the types of drugs they are dealing, the manner of packaging these drugs, their vehicles and registrations and a considerable amount [of] intelligence information all of which has been verified through various investigative techniques, and through the use of other confidential and reliable police informants.

4[.] In the month of October 1990 Chief Pennington of the Kline Township Police Department spoke with Mahanoy City Police, namely Officer John Phillips. Officer Phillips stated that there were numerous complaints of drug activity involving the Zelasny [b]rothers. Criminal investigator George B[.] Woodward Jr.[,] from the Tamaqua Police Department[,] has had drug charges on Frank Zelasny in the past. Agent Robert Bruce OAG/BNI has had occasion to interview at least (3) [t]hree [confidential] informants who

have given true and accurate information in the past. These informants are all [independent] of each other and all three gave information that [the] Zelasny's [sic] were dealing [h]eroin and that they could purchase drugs from Frank and Mike (Zelasny's) [sic] [.] Due to time restraints Agent Bruce has not had time to accomplish a purchase. Confidential informants stated that it is common practice for the Zelasny's [sic] to drive to New York City to purchase [quantities] of [h]eroin and return to Schuylkill County, [m]ainly the Mahanoy City Area.

5[.] On 24 January at approx. 8 P.M. Robert Ravina received an anonymous call at the Kline Twp. P.D. The caller stated that the Zelasny[s] were going to New York City tomorrow to buy [h]eroin and they were taking orders from people for drugs. Caller stated they would be in one of three vehicles. The first would be a 1988 Jeep pick-up truck with red trim, Pa. reg. # YD–39427, the second a 1971 Dodge Swinger, [brown] in color, Pa. reg. # WXG–436[;] [t]he third is a 1980 white Cadilac [sic], Eldorado, Pa. Reg. Temp. YRE–373. Caller stated [that it] would be in the A.M. that they would be going to leave[,] [a]fter picking up someones [sic] money in McAdoo. Based on the information received and the investigation conducted, surveillance [sic] was set up on 25, Jan. 1991 at 10:00 A.M. To further substantiate the information, [a]t 12:55 P.M. a white Cadillac[,] bearing Pa. Reg. # Temp. YRE–373[,] . . . containing two white male occupants was followed through the borough of McAdoo and followed to the Consolidated Cigar Co.[,] Carbon Co.[,] just outside of McAdoo. The vehicle approached the guard shack and parked. After several minutes elapsed[,] a[n] unidentified white male, thin build long black hair[,] approached and spoke [briefly] with the passenger of the white Cadillac. On 25 Jan. 1991, at approx. 2:20 P.M. the vehicle left McAdoo after [stopping] at a drug store (DeBalko Pharmacy)[.] Officers from the Schuylkill County Drug Task Force followed the suspect vehicle to the New Jersey border by Rte # 78.

6) Information stated that the Zelasny[s] will be transporting controlled substances which is a violation of Act # 64, of the Controlled Substance, Drug, Device and Cosmetic Act of 1964 as amended.

7) Based upon the information received and the investigation conducted[,] your affiants have firm [belief] the actors will return to Schuylkill County with the heroine [sic]. Your [a]ffiants believe that the Zelasny brothers[,] Frank and Mike[,] are engaged in the illegal and ongoing storage and sales from the white Cadillac described above.

Search warrant affidavit at 1, 2, and 3.

The informant(s) reported numerous complaints of drug activity by the Zelasny brothers. They indicated that the Zelasnys were dealing in heroin, that drugs could be purchased from them, and that it was common practice for the Zelasnys to drive to New York City to purchase drugs and return to Schuylkill County with them.

On January 24, 1991, the affiant received information that the Zelasnys were going to New York City the next day to purchase heroin and that they were taking orders from people for drugs. The affiant was told that the Zelasnys would be traveling in one of three specifically described vehicles, and that they would be leaving for New York City after picking up someone's money in McAdoo Borough. The next day, the drug task force observed one of the three described vehicles, a white Cadillac, occupied by two unidentified white males. The Cadillac was followed through McAdoo to a cigar company building located just outside the borough. Another unidentified white male was observed speaking with the passenger of the vehicle. Shortly thereafter, the vehicle departed the McAdoo area and was followed along Interstate 78 until the Cadillac reached and crossed the New Jersey border.

Based on this information, the affiant alleged that he had a firm belief that "the actors will return to Schuylkill County with the heroin." Sergeant Ravina, the affiant, delayed applying for the search warrant until the evening of January 25th when the vehicle occupied by the still unidentified white males

had returned to Schuylkill County. However, the fact of the vehicle's return or its location within the Commonwealth is not set forth in the affidavit. No evidence outside the affidavit may be considered by the issuing authority or by the suppression hearing judge. Pa.R.Crim.P. 2003(a) and (b). *See Commonwealth v. Milliken,* 450 Pa. 310, 315 n. 3, 300 A.2d 78, 81 n. 3 (1973).

Even applying the test of the totality of the circumstances, *Commonwealth v. Gray,* 509 Pa. 476, 485, 503 A.2d 921, 925 (1985), in a most liberal way, when one stays within the four corners of the affidavit, there is totally lacking any fair probability that drugs would be found in any particular place at the time the affidavit was issued. All that is established by the affidavit is that two unidentified white males in a white Cadillac of unknown ownership exited Pennsylvania along Interstate 78 one afternoon and that the Zelasnys—who are not placed in the Cadillac—are known drug dealers.

We find the analysis by the suppression hearing court on this point as set forth in its Opinion of Court filed November 26, 1991, at 10–11, to be sound:

> On the evening before applying for the search warrant Sergeant Ravina received an anonymous phone call with additional information. Sergeant Ravina was not in a position to vouch for either the reliability of the informant or the manner in which the information was obtained. Through surveillance the next day the officers were able to confirm that one of the vehicles identified by the caller was in the McAdoo area making stops, as the caller had predicted. The vehicle contained two white male occupants, but the affidavit gave no indication to the district justice that the occupants had been identified as the defendants. The vehicle was then followed to the New Jersey border along Interstate 78. Although not stated in the affidavit, assuming the district justice was reasonably familiar with the possible routes from Schuylkill County to New York City, he could have recognized I–78 as the route most likely to be taken by a vehicle enroute to New York City; however, even assuming that the affidavit gives the magistrate suffi-

cient information from which he could reasonably conclude that the vehicle was occupied by the defendants and on its way to New York City, there is nothing in the affidavit that indicates the frequency that the defendants were alleged to travel to New York for drugs, how long they would stay, and when they could be expected to return. There is no basis from which the district justice could conclude that drugs would be found in the vehicle at the time that the warrant was issued. We are, therefore, constrained to conclude that the warrant could not support the search of the defendants' vehicle or the defendants.

As did the Honorable William E. Baldwin, we conclude that the warrant could not support the search of the white Cadillac or the occupants of that car. *Commonwealth v. Flaherty, supra.*

Turning to the alternative grounds upon which the trial court sustained the search, we are unable to find exigent circumstances on these facts. The trial court relied upon the testimony of Chief George Pennington of the Kline Township Police Department to demonstrate the existence of probable cause and exigent circumstances that would excuse the absence of a warrant at the outset. We believe this was error.

Exigent circumstances exist when the inevitable delay involved in getting a warrant must give way to an urgent need for immediate action. *Commonwealth v. Conn,* 377 Pa.Super. 442, 547 A.2d 768 (1988). The exigent circumstance exception applies when evidence will be destroyed or when the safety of officers or other individuals is at stake. *Id.; Commonwealth v. Williams,* 411 Pa.Super. 586, 602 A.2d 350 (1992).

First, we are unaware of any case that supports the application of the exigent circumstance exception in the face of a defective warrant. Where a warrant has been sought, issued, executed, and subsequently found to be defective, the exigent circumstance exception simply cannot come into play. The exception is inconsistent with a warrant application.

■ Moreover, in this case, the Task Force was not moving to capture evidence that was likely to be destroyed. The first information that a New York buy was in the making was received by the Task Force the evening of January 24, 1991. The Task Force received additional information both early the next day and continuing up until the white Cadillac departed Pennsylvania sometime after 2:20 P.M. that same day. Upon re-entry into the Commonwealth, the Cadillac was again followed by Task Force members. The Task Force had intentionally stationed Sergeant Ravina at the police station so that he could prepare an affidavit and application for a search warrant. The warrant was issued at 8:00 P.M. It was not until at least fifteen minutes later that the white Cadillac was stopped at the front of a line of traffic along State Route 309. If the Task Force had not stopped the vehicle, it would likely have continued to proceed back to its point of origin with whatever contraband that may have been in the vehicle still intact. Under no circumstances could these facts be viewed as supporting an urgent need for immediate action without a warrant.

The trial court was correct in concluding that the warrant could not support the search of the vehicle. It erred, we believe, in seeking to apply the exigent circumstance exception after having already determined that the warrant application was defective.

We do not read Judge Baldwin's Opinion of Court filed November 26, 1991 as primarily attacking either the veracity or the reliability of the informants. Rather, Judge Baldwin found, and we agree, that when the four corners of the affidavit are carefully examined, there is nothing in that affidavit to place the Zelasnys in the white Cadillac at any time on January 25, 1991, nor is there anything in the affidavit to permit a reasonable conclusion that drugs would be found in the Cadillac at the time the warrant issued.

At the time the warrant issued, the occupants of the white Cadillac remained unidentified in the affidavit. There was no claim that drugs had ever been seen in the Cadillac. The affidavit contained no information concerning the actual itiner-

ary of the Cadillac or its unidentified occupants at any time while it remained outside the Commonwealth. Although the affiant did allege his *belief* that the Zelasnys were engaged in the illegal and ongoing storage and sale of drugs from the Cadillac, there is nothing included in the affidavit setting forth *prior knowledge* by any informant that the Cadillac was so being used. *Cf. Commonwealth v. Flaherty, supra.*

We do not find the reliability of the anonymous and confidential informants to be enough to offset the lack of factual averments placing both the Zelasny Brothers and drugs in the white Cadillac at about 8:00 P.M. on January 25, 1991, when the search warrant was issued. We accordingly are constrained to vacate the judgment of sentence, reverse the order denying the pretrial motion to suppress, and remand this matter for a new trial at which the evidence seized on the authority of the defective warrant would be excluded.

Judgment of sentence **VACATED.** Order denying motion to suppress **REVERSED.** Case **REMANDED** for a **NEW TRIAL.**

OLSZEWSKI, J. files a Dissenting Opinion.

OLSZEWSKI, Judge, dissenting:

There were four police officers from three separate police stations in Schuylkill County who were aware, through investigations and prior police contact, that the Zelasny brothers sold drugs. At least three reliable informants told these officers, members of the Schuylkill County Drug Task Force, that it was common practice for the Zelasnys to drive to New York, purchase drugs, return to Mahanoy City, Schuylkill County, and resell the drugs. Another informant telephoned Officer Robert Ravina and told him that the next morning the Zelasnys were going to pick up some money in the town of MacAdoo, drive to New York in one of three specified vehicles, and purchase drugs. The next morning, the Task Force witnessed "two white males" enter one of the automobiles, drive to MacAdoo, pick up some money, and drive to New York. Officer Ravina included this information in an affidavit,

concluding that he had a "firm belief" that the car would return from New York with drugs and that the Zelasny brothers would sell those drugs. My learned colleagues hold that these allegations were insufficient to establish probable cause to believe that drugs were in the car. I respectfully dissent.

The majority concludes that the affidavit's allegations are insufficient to identify the Zelasny brothers as the drivers of the car. This hypertechnical reasoning expects a neutral magistrate to ignore the obvious: nearly every officer who was a member of the Schuylkill County Drug Task Force, the same force to which Officer Ravina belonged, personally knew the Zelasny brothers and their propensity to distribute drugs from New York. Nonetheless, since Officer Ravina chose to use the term "white males," instead of "the Zelasnys," to describe the occupants of the car, his "firm belief" that the Zelasny brothers were selling drugs from a car which, as predicted, stopped in MacAdoo to engage in an illicit monetary transaction en route to a known drug source was pure speculation. We are asked to: (1) ignore the fact that this affidavit was prepared at 8:00 p.m., a mere fifteen minutes before the car returned to Schuylkill county, and (2) suppose that it could have been *any* "two white males" who, as predicted, drove a particular car to a particular destination, picked up money, and drove to a known drug source. When the Zelasny brothers turned out to be the actual drivers of the car, this was, of course, mere happenstance.

Whether an affidavit alleges facts which support a finding of probable cause is one that should be made in a "common sense, nontechnical, ungrudging and positive manner." *Commonwealth v. Baker*, 532 Pa.Super. 121, 126, 615 A.2d 23, 25 (1992). The majority gives mere lip service to this standard by refusing, as we explain above, to allow the magistrate to read the affidavit in its context. Moreover, the learned majority does a disservice to its own rigid reading of the affidavit by referring to the drivers of the car as the "unidentified" drivers. A close reading of the affidavit discloses otherwise:

> 5. ... Based on the information received and the investigation conducted, surveillance [sic] was set up on 25, Jan. 1991 at 10:00 A.M. To further substantiate the information, [a]t 12:55 P.M. a white Cadillac[,] bearing Pa. Reg. # Temp. YRE–373[,] ... containing *two white male occupants* was followed through the Borough of MacAdoo and followed to the Consolidated Cigar Co.[,] Carbon Co.[,] just outside of MacAdoo. The vehicle approached the guard shack and parked. After several minutes elapsed[,] *an unidentified white male,* thin build long black hair[,] approached and spoke briefly with the passenger of the white Cadillac.

(Emphasis added.) Under the plain wording of the affidavit, it was the person at the cigar factory who was "unidentified," not the passengers of the white Cadillac. I see it as perfectly logical to allow a magistrate to conclude, given the task force's knowledge of the Zelasnys' identity and the significant factual corroboration of the informant's tip, that there was a fair probability that the Zelasnys were "the two white males" who were driving the white Cadillac and that drugs were contained in the vehicle.

The majority's reliance on *Commonwealth v. Flaherty,* 400 Pa.Super. 397, 583 A.2d 1175 (1990), moreover, is misplaced. In that case, Flaherty was a known dealer of percocet pills. An informant told police that Flaherty was so successful that he purchased a new car with the profits he reaped. The informant also indicated that Flaherty "will deliver pills to special customers using his car." *Id.* at 400, 583 A.2d at 1176. Based on these allegations, the police obtained a search warrant and, while Flaherty was washing his car, executed it. We held that there was no probable cause to believe that there were drugs in the car at the time the warrant issued. The informant did not indicate that he had ever seen drugs in the car and only implicated Flaherty in uncertain future conduct. We noted that

> absent from [the informant's] declaration is any reference to a time frame from which to anticipate drugs being delivered from [Flaherty's] vehicle. The particular frequency of such deliveries in the past, as well as the probability that such

might continue at any particular time in the future remains wholly a mystery. Were such deliveries made by [Flaherty] hourly, daily, weekly, monthly, or at some other interval of time? "Any selection of time on our part would be purely conjectural—so too must have been the magistrate's determination."

*Id.* at 404, 583 A.2d at 1179 (quoting *Commonwealth v. Conner*, 452 Pa. 333, 340–41, 305 A.2d 341, 345 (1973)).

Here, the magistrate hardly needed to engage in any temporal speculation regarding when drugs might be located in the white Cadillac. The affidavit stated that the Zelasnys, known drug dealers, would be traveling to and returning from New York, a known drug source, on January 25. On January 25, while the car was returning from New York, thus corroborating the tip, the police applied for a search warrant. This case is entirely antithetical to *Flaherty* because here the informant predicted precisely when the criminal conduct would occur, whereas in *Flaherty* there was no such indication.[1] What was conjectural in *Flaherty* was imminent here.

I simply cannot accept my colleagues' postulation that the affidavit fails to identify with fair probability the Zelasny brothers as the drivers of the white Cadillac. Moreover, even if the Zelasnys were not identified properly, it is more than mere coincidence that "two white males" drove the Cadillac out of Mahanoy City, stopped at a factory in MacAdoo, and

1. It is also interesting to note that in *Flaherty,* the police executed a speculative warrant while defendant was washing his car. There was absolutely no independent corroboration that any illegal activity was occurring in that car. Here, the police waited until their tip was fully corroborated to seek and execute a warrant. It seems that in this case, where there is a higher degree of urgency than in *Flaherty,* the police are being punished for being scrupulous. Although the majority is correct in asserting that we cannot look outside of the affidavit's four corners, I cannot realistically entertain any notion that the police did not precisely know who the Zelasnys were, that they knew the Zelasnys were driving the vehicle, and that all of this was lost on the magistrate. Indeed, it is undisputed that the "unidentified" male at the cigar factory was an informant employed by another member of the Drug Task Force, specifically instructed to give "buy money" to the Zelasnys. By engaging in trifles, the majority simply ignores the reality of the situation and the context of the affidavit.

drove on a highway which leads directly to New York. These actions alone, which fully corroborate the informant's tip, indicate to me that there was a fair probability that criminal activity was transpiring, and that drugs would be located in the car. If the police work in this case, as fully evidenced by the allegations in the affidavit, does not present probable cause, the Schuylkill County Police Drug Task Force has my sympathy.