**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Terry Lee SCHATZEL, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 5, 1998.

Filed Dec. 4, 1998.

Reargument Denied Feb. 16, 1999.

Blythe H. Evans, Jr., Wilkes–Barre, for appellant.

Peter Paul Olszewski, Jr., District Atty., and Frank P. Barletta, Asst. Dist. Atty., Wilkes–Barre, for Com., appellee.

Before McEWEN, President Judge, and STEVENS and LALLY–GREEN, JJ.

STEVENS, J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Luzerne County following Appellant's conviction on the charge of driving while under the influence of alcohol (DUI).[1] Herein, Appellant contends that the lower court erred in failing to suppress the evidence seized incident to his arrest. Specifically, he alleges that he was arrested unlawfully by a wildlife conservation officer and deputy who acted beyond their authority as vested under the Game and Wildlife Code.[2] We affirm.

In reviewing the denial of a motion to suppress, our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. We may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992) (citations omitted).

The lower court's factual findings are supported by the record and are as follows. In the evening of September 14, 1995, Joseph Wenzel, a wildlife conservation officer of the Pennsylvania State Game Commission, and Robert Orbin, a deputy Game Commission officer, were driving on a public highway in response to an official call when they encountered Appellant's dump truck parked diagonally across the road, blocking both lanes of traffic. The uniformed officers positioned their marked patrol vehicle alongside Appellant's truck and asked if he needed assistance, but Appellant, who, the officers testified, appeared "glassy-eyed," failed to respond. When a car then approached from around a bend, Officer Wenzel turned on his vehicle's lights and ordered Appellant to move his truck off the road. Instead, Appellant drove away until, nearly veering off the road with the officers in pursuit, he finally stopped a quarter of a mile later.

Once stopped, Appellant complied with the officers' orders by handing over his driver's license, registration, and keys to Deputy Orbin, who noticed that Appellant slurred his speech and smelled of alcohol. Officer Wenzel, meanwhile, promptly contacted the Pennsylvania State Police and asked for assistance. Appellant was allowed to remain in his truck free from any personal restraints during this time, and the officers used no threats of force to keep Appellant at the scene. State Trooper Joseph Wasko arrived shortly thereafter, performed field sobriety tests, and arrested Appellant for DUI.

In a pretrial motion, Appellant moved to suppress all evidence seized incident to his arrest, including the results of his blood alco-

1.  75 Pa.C.S.A. § 3731.

2.  34 Pa.C.S.A. § 901 et seq.

hol test, which registered .167%. The lower court denied Appellant's motion following a hearing, and the case moved on to a bench-trial, where the court found Appellant guilty on all counts. After the denial of post-sentence motions, Appellant filed this timely direct appeal, questioning the authority of the game officer and his deputy to stop and, in his opinion, arrest him.

The Commonwealth's initial response to Appellant's claim is that the Game Commission officers did not arrest Appellant, but merely detained him during an investigatory stop until the State Police arrived. We agree.

As the Pennsylvania Supreme Court has observed, three categories of interactions between citizens and law enforcement officers vested with police power exist under Fourth Amendment jurisprudence:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ellis*, 541 Pa. 285, 294, 662 A.2d 1043, 1047 (1995) (citations omitted) (footnote omitted). Moreover, this Court has observed that:

> Traffic stops, like *Terry* stops, constitute investigative rather than custodial detentions, unless under the totality of circumstances the conditions and duration of the detention become the functional equivalent of an arrest. . . . Among the factors generally considered in determining whether a detention is investigative or custodial are: the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and,

the investigative methods used to confirm or dispel suspicions.

*Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269, 1274 (1995) (citations omitted), *appeal denied*, 546 Pa. 676, 686 A.2d 1308 (1996).

In *Gommer*, this Court ruled that the stop and detention of a DUI suspect by an off-duty police officer, who stopped the suspect's car, took the driver's keys and quickly requested State Police assistance, was an investigative detention and not an arrest. *Gommer, supra*. The circumstances leading to this Court's conclusion were that the off-duty officer refrained from interrogation, used no threats or force, administered no sobriety tests during the brief detention period, and yielded the case to State Police after apprising them of her observations. *Id.*; *Compare Commonwealth v. Kiner*, 697 A.2d 262 (Pa.Super.1997) (holding that an arrest occurred where an off-duty Pennsylvania State Trooper stopped vehicle for suspected DUI, displayed weapon when ordering driver out of car, handcuffed driver and held him by his arm in a threatening way until on-duty troopers arrived at the scene).

The present facts are virtually indistinguishable from the facts in *Gommer*, and, thus, demand that we find that the game officers' seizure of Appellant was consistent with that of a brief investigative detention. While Appellant was seized within the meaning of both the Fourth Amendment and Article I section 8, since he was clearly not free to leave once stopped, *See Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996), Appellant's detention was more analogous to a *"Terry* Stop" than to a formal arrest. The officers exerted little coercion in briefly detaining Appellant while they observed his condition, checked his identifications, and called the State Police to handle the case. Once the trooper arrived, the game officers briefed him and transferred the case to him. Therefore, we consider the seizure at issue an investigative detention and not an arrest, and proceed to review whether Officer Wenzel and Deputy Orbin acted upon reasonable

suspicion and with proper authority.[3]

■ This Court has held that a uniformed Game Commission officer may stop any vehicle at any time or place upon reasonable suspicion, provided the officer displays his badge or other identification and states the purpose of the stop. *Commonwealth v. Palm*, 315 Pa.Super. 377, 462 A.2d 243 (1983). Thus, where specific and articulable facts, taken together with rational inferences from those facts, present a driver engaged in suspicious activity, a Game Commission officer is reasonably warranted to perform a brief investigatory stop as an intermediate response "to maintain the status quo momentarily while obtaining more information." *Id.* at 247, 462 A.2d 243, *quoting Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

■ The record reveals that Officer Wenzel and Deputy Orbin were presented with a sufficient factual basis for stopping and detaining Appellant for DUI. The evidence described a glassy-eyed, unresponsive driver whose truck was parked across a winding state route at night, and who drove away when confronted by law enforcement officers. In pursuit, the officers witnessed Appellant's truck scrape against roadside vegetation, and when Appellant's truck finally pulled over, they observed Appellant as he slurred his speech and smelled of alcohol. As such, Appellant represented an ostensible threat to life and property, and Officer Wenzel and Deputy Orbin acted upon reasonable suspicion, as well as in the public interest, in stopping and detaining Appellant.

■ Appellant raises the objection, however, that, though he may have exhibited conduct which would have reasonably warranted a police officer to stop and investigate, Wenzel and Orbin lacked the authority to stop and detain Appellant for a general traffic violation unrelated to Game and Wildlife law. In recognizing the authority of game officers to stop and even arrest for such a violation, this Court has recently reviewed the Game and Wildlife Code and held:

> [D]riving under the influence is clearly one of the offenses for which a wildlife conservation officer is authorized to arrest under subsection 901(a)(17). Moreover, the Game Commission regulations ... specifically enumerate violations of 75 Pa.C.S.A. section 3731 as one category of offenses for which a wildlife conservation officer may arrest. However, it is also clear that a wildlife conservation officer is authorized to arrest for such an offense only "when acting within the scope of the officer's employment." 34 Pa.C.S.A. § 901(a)(17). Thus, in deciding whether [a game officer] was authorized to arrest ... under these facts, we must determine whether [the officer] was acting within the scope of his employment.

*Commonwealth v. Carlson*, 705 A.2d 468, 470 (Pa.Super.1998). Thus, a Game Commission officer is permitted to arrest for DUI provided he does so while acting within the scope of his duty. *See also* 58 Pa.Code § 131.6 ("A wildlife conservation officer may arrest for ... misdemeanors or felonies **when the offenses occur in the officer's presence and while acting within the scope of the officer's employment**.") (emphasis added). We likewise construe 34 Pa.C.S.A. § 901(a)(6) and (17)[4] to confer upon a Game Commission

---

**3.** In Appellant's "Statement of the Issue Presented," he restricts his focus to whether the Game officers' "arrest" of him was lawful. However, because Appellant's brief presents argument which assails the "seizure" and "detention" he suffered as a violation under the Fourth Amendment, we will review whether the game officers lawfully executed their investigative detention of Appellant.

**4.** § 901. Powers and duties of enforcement officers

(a) Powers.—Any officer whose duty it is to enforce this title or any officer investigating any alleged violation of this title shall have the power and duty to:

... (6) Stop and inspect or search at any time, without warrant, any means of transportation within this Commonwealth. Any officer who stops any means of transportation shall be in uniform and present a badge or other means of official identification and state the purpose of the inspection or search.

... (17) When acting within the scope of the officer's employment, pursue, apprehend or arrest any individual suspected of violating any provision of Title 18 (relating to crimes and offenses) or any other offense classified as a misdemeanor or felony.... All powers as pro-

officer acting within the scope of his duty the authority to stop, inspect, and detain or apprehend upon a reasonable suspicion of DUI, even if the suspected violation occurs not on gamelands but on a public road. What remains to determine, therefore, is if Officer Wenzel and Deputy Orbin were acting within the scope of their duty when they observed the conduct that prompted them to stop and detain Appellant.

In *Carlson*, a game commission officer was transporting a deer carcass to a game lands building, when he saw a car ahead of him cross the center line of a state highway. Following this car for the remainder of his trip, the officer observed no further instances of erratic driving. Nonetheless, he opted to drive past the game lands building in order to follow the car further. Thereafter, the officer witnessed the car swerve several more times, prompting him to stop the car and arrest the driver for DUI.

In reversing the lower court's judgment of sentence, this Court agreed that the game officer was in the process of discharging his duty when he witnessed the suspect's first swerve, since he was in route during an official task. But we concluded that the officer acted beyond the scope of his duty once he drove by his designated destination, and, thus, that he unlawfully arrested the suspect based on his subsequent observations. Moreover, the first swerve that occurred while the officer acted within the scope of his duty did not, alone, create an articulable reasonable suspicion or probable cause that the driver was DUI, since it was an isolated and brief infraction which did not adversely affect surrounding traffic. But important to the within case is that in *Carlson*, this Court acknowledged that a game officer driving on a state route in performance of an official task may, if presented with sufficient evidence during that time, execute a stop and arrest for DUI.

■ It is clear that in the present case, Officer Wenzel and Deputy Orbin were acting within the scope of their duty when they encountered Appellant and observed his colorable conduct, as they were en route on an official call at the time. Therefore, the officers surely possessed the authority to stop and detain Appellant. Furthermore, there is every indication in this record that the Game officers were conscious of the limits of their authority and took care not to overstep those limits. Indeed, by immediately summoning the services of the State Police to administer sobriety testing and execute the ultimate arrest, the officers were mindful of their duty under 58 Pa.Code § 131.6, which admonishes Game Commission officers to notify the appropriate law enforcement agency of an arrest and transmit the case thereto for further investigation or prosecution. Though we have found that, as a matter of law, the Game officers did not arrest Appellant, their quick transfer of authority over this matter nonetheless demonstrated their respect for the procedural protections afforded citizens by the Pennsylvania legislature, and the lower court committed no error in recognizing such.

■ Finally, we quickly dismiss Appellant's subordinate claim that the detention was infirm since Deputy Orbin, and not Officer Wenzel, secured Appellant's papers and keys. According to Appellant, only Game Commission Officers, and not deputies, are vested with the authority to so detain. Yet, as Officer Wenzel was behind the wheel of the state vehicle and clearly in charge of making the stop, we find his ordering his deputy to secure Appellant's several belongings a legitimate measure of effecting a stop and detention according to 34 Pa.C.S.A. § 901(a)(13).[5] Moreover, Game Commission deputies possess the statutory authority, via 34 Pa.C.S.A. §§ 902 and 901(a)(6), (7), and

---

vided for in this paragraph will be limited by such administrative procedure as the director, with the approval of the commission, shall prescribe. The regulations shall be promulgated within 90 days of the effective date of this paragraph.

**5.** § 901. Powers and duties of enforcement officers

(a) Powers.—Any officer whose duty it is to enforce this title or any officer investigating any alleged violation of this title shall have the power and duty to:
(13) Demand and secure assistance when the officer deems it necessary.

(14), to search and inspect any person or means of transportation and to demand and secure identification from any person.[6] Thus, we find nothing infirm about a Game Commission officer enlisting the aid of his deputy during a legitimate stop and detention.

In sum, we find that Officer Wenzel and Deputy Orbin lawfully stopped and detained Appellant for colorable conduct which occurred in their presence and while they acted within the scope of their employment. Deputy Orbin held the statutory authority to secure Appellant's license, registration, and keys, and Officer Wenzel complied with his charge to promptly call in the State Police and cede to them all authority over Appellant's matter. Presented with a case in which the stop and detention in question violated none of Appellant's rights under the law, the lower court properly denied Appellant's motion to suppress all evidence gathered incident to his arrest. Accordingly, we affirm.

Affirmed.

McEWEN, President Judge, dissents.

6. § 902. Deputy Game Commission officers
   Except for the powers conferred under section 901(17) and (18) (relating to powers and duties of enforcement officers), deputy Game Commission officers shall, unless further restricted by the director, exercise all the powers and perform all the duties conferred by this title on Game Commission officers.
   § 901. Powers and duties of enforcement officers
   (a) Powers.—Any officer whose duty it is to enforce this title or any officer investigating any alleged violation of this title shall have the power and duty to:
   (6) Stop and inspect or search at any time, without warrant, any means of transportation within this Commonwealth....
   (7) Inspect and examine or search, at any time or place, any person or means of transportation....
   (14) Demand and secure identification from any person.