**COMMONWEALTH OF PENNSYLVANIA,**
**Appellee,**

v.

**James REVERE, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 11, 2002.

Filed Nov. 20, 2002.

Reargument Denied Jan. 27, 2003.

Karl Baker, Philadelphia, for appellant.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Com.

Before: DEL SOLE, P.J.; KLEIN and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 This case is before this Court on appeal from James Revere's (hereinafter appellant) conviction and sentence for violations of the Uniform Firearms Act. We find that appellant was not under arrest when placed in the police car and transported a short distance. As the officers believed a fellow officer was in trouble, placing appellant in the car was proper in response to those exigent circumstances. Therefore, the *Terry* stop was appropriate and we affirm the judgment of sentence.

¶ 2 On July 2, 1997, Officer Broderick Mason observed appellant James Revere sitting with Charles Felder and an unidentified man in the 2500 block of Chadwick Street in Philadelphia. A woman approached and gave Felder cash in exchange for several small objects taken by Felder from a plastic bag he was carrying.

¶ 3 Shortly thereafter, the three men walked around the corner. Accompanied by his partner, Officer Carl Selby, Officer Mason approached the three men. Officer Mason believed that the transaction with the woman was a drug transaction. He based this suspicion on his seven years of experience as a police officer, over sixty occasions of narcotics surveillance, and his knowledge that the area where the three

men were located was a high drug-trafficking area.

¶ 4 Upon seeing the officers approach, the unidentified man fled and two other officers pursued him. N.T. Trial, 3/3/98, at 3. Officers Selby and Mason then proceeded to conduct an investigatory stop of Felder and appellant. Shortly thereafter, before finding any contraband on Felder or appellant, Officers Selby and Mason heard the screams and shouts of the officers who had pursued the unidentified man. *Id.* Believing that their fellow officers were in danger, Officers Selby and Mason placed Felder and appellant in the back seat of their car, instructed them to place their hands on top of their head, and drove to where the screams had originated, which was also the location where the transaction occurred. *Id.*

¶ 5 Upon arriving, Officers Selby and Mason learned that the unidentified man had disappeared. They then retrieved Felder and appellant from their car and continued with the investigatory stop. While Officer Selby was frisking Felder, appellant, who had not and was not being frisked, dropped an unlicensed .38 caliber handgun down the leg of his pants and kicked it under the car. It was retrieved, at which time Officer Selby searched appellant and found three rounds of .38 caliber ammunition and $1,005 in cash on appellant's person. Trial Court Opinion, 5/29/01, at 2.

¶ 6 Following a bench trial, appellant was convicted of carrying a firearm without a license and carrying firearms on public streets or public property in Philadelphia. *Id.* at 1. On March 5, 2001, appellant was sentenced to nine (9) to twenty-three (23) months' incarceration followed by two (2) years' reporting probation. *Id.* An appeal followed concerning the suppression court's denial of appellant's motion to suppress the gun. Appellant al-

leged, as he does now, that he had been arrested prior to the discovery of the gun, the arrest was not supported by probable cause, and, therefore, the gun should have been suppressed.

¶ 7 The question presently before us is whether the seizure of appellant prior to the discovery of the gun was legal. In order to resolve this issue, we must answer two additional questions: To what type of seizure was appellant subjected? Was the necessary degree of suspicion present to support that stop?

¶ 8 There are three types of interactions between police and citizens for exclusionary purposes. First is the "mere encounter" which need not be supported by any cause. *Commonwealth v. Watkins,* 750 A.2d 308, 312 (Pa.Super.2000) (quoting *Commonwealth v. Schatzel,* 724 A.2d 362, 365 (Pa.Super.1998)). Second is the "investigatory detention" or "investigatory stop," which is limited in its intrusion and for which the officer must have articulable reasonable suspicion for the detention. *Id.* Finally, arrest, or custodial detention, encompasses all other seizures and must be supported by probable cause. *Id.*

¶ 9 The suppression court found that the detention of appellant was an investigatory stop and supported by reasonable suspicion. N.T. Trial, 3/3/98, at 4.

¶ 10 Our standard of review for an appeal denying a motion to suppress is well settled.

In reviewing the decision of a suppression court, we must ascertain whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. We will consider only the evidence of the Commonwealth and that defense evidence which remains uncon-

tradicted when read in the context of the entire record.

*Commonwealth v. Johnson*, 734 A.2d 864, 869 (Pa.Super.1999)

¶ 11 Appellant contends that the suppression court erred by not finding that he was arrested without probable cause prior to the discovery of the gun. We disagree.

¶ 12 Police detentions become custodial, therefore requiring probable cause, when, under the totality of the circumstances, the detention becomes coercive to the extent it functions as an arrest. *Watkins*, 750 A.2d at 312.

¶ 13 The factors to be used to determine whether the detention has become an arrest are

The basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Id.* at 313 (quoting *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa.Super.1999) (other citations omitted)).

¶ 14 An examination of the suppression court's findings of fact, in addition to the record, supports the suppression court's conclusion that appellant was not under arrest at any time prior to the discovery of the gun. Appellant was arrested only after this discovery. Until then, he was detained for only a brief period of time. Force was never used, nor were restraints, and appellant was never transported far from the vicinity in which he was stopped. All of these circumstances indicate that the detention avoided the coercive characteristics associated with an arrest. As such, it remained investigative and never became so coercive as to render it an arrest.

¶ 15 Appellant, however, argues that *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982), compels finding that he had been arrested prior to the discovery of the gun. In *Lovette* our Supreme Court has held that, absent exigent circumstances, placing a suspect into a police vehicle in order to transport him to the scene of the offense exceeds the limits of an investigatory stop as defined by our courts and must be supported by probable cause. *Id.* at 980. Appellant would urge us to infer a *per se* rule regarding placing suspects in police cars. To do this, however, would be to misread *Lovette*.

¶ 16 In addition to the above, *Lovette* clearly indicates that when such an action is justified, placing a suspect into a police vehicle in order to transport him to the scene is not an arrest and need not be supported by probable cause. *Id.* Indeed, what *Lovette* stresses is that any intrusion upon a person's liberty must be justified.

¶ 17 Appellant was detained, put into a police vehicle, and transported back to the scene. While we do acknowledge that the transportation of appellant was an intrusion of appellant's person, in order to decide whether the intrusion was justified we must examine the circumstances surrounding it. *Lovette*, under its facts found no such justification but suggested, admittedly in dictum, that transporting a suspect could be justified by exigent circumstances. *Id.* As the suppression court also discussed the presence of exigent circumstances, we will discuss these first.

¶ 18 In this case the suppression court concluded that "justifiable exigent circumstances existed," which required the officers to interrupt their stop of appellant in order to assist their fellow officers who had gone in pursuit of the unidentified man.

¶ 19 This Court has stated that exigent circumstances, "exist when inevitable delay involved in [following normal procedure] gives way to urgent need for immediate action." *Commonwealth v. Zelasny*, 430 Pa.Super. 585, 635 A.2d 630, 635 (1993). The facts in the record support a finding that such circumstances existed. Officers Selby and Mason heard shouts and screams from the officers who pursued the unidentified man. To have ignored these screams in order to complete the investigative stop of appellant and Felder would have required Officers Selby and Mason to have ignored the calls of their fellow officers. Alternatively, Officers Selby and Mason would have had to abandon their investigation to respond to the shouts. Such choices, it seems, are those that the language in *Lovette* was intended to allow police to avoid making. As such, the facts in the record support the suppression court's finding that exigent circumstances were present prior to appellant being transported in the police vehicle.

¶ 20 The circumstances surrounding the detention prior to the discovery of the gun failed to exceed the limitations placed by our courts on investigatory detentions by police. While the transportation of appellant was an additional intrusion, it was adequately justified by the exigent circumstances that accompanied it. As such, reasonable suspicion by the officers is all that the law requires to make the seizure of appellant valid. We find that such suspicion was present.

¶ 21 While appellant is correct that Officers Selby and Mason lacked probable cause to arrest his companion, Felder, the police did possess sufficient articulable suspicion to stop Felder. *See Commonwealth v. Valentin*, 748 A.2d 711 (Pa.Super.2000) (reasonable suspicion present where 5–year veteran officer spotted the exchange of a small item for cash on a street upon which narcotics transactions were known to be frequent). Felder was seen exchanging a small item for cash in the 2500 block of Chadwick Street, a high drug-trafficking area, by Officer Mason, a 7–year veteran with over sixty operations of drug surveillance to his record. This was more than enough suspicion to justify a stop of Felder.

¶ 22 There was reasonable suspicion to stop Felder; therefore, there was reasonable suspicion to stop appellant. "When a person is suspected of presently committing a crime, a reasonable suspicion develops that his companion is also involved, even though the companion's only suspicious action was being in the company of the suspect." *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346, 348 (1992). Appellant was observed by Officer Mason with Felder before the transaction, during the transaction, and then by Officers Selby and Mason walking with Mr. Felder shortly after the transaction. Appellant was Felder's companion and, as he was present during the entire course of events, the police had reasonable suspicion to stop him also.

¶ 23 Prior to the discovery of appellant's gun in plain sight of the officers, the seizure of appellant was legal, justified by reasonable suspicion and the exigent circumstances surrounding his transportation. The discovery of the gun was therefore not the product of an illegal seizure and was properly admitted by the trial court.

¶ 24 Judgment of sentence affirmed.

¶ 25 Dissenting Statement By DEL SOLE, P.J.

DEL SOLE, P.J., Dissenting:

¶ 1 Because I conclude that our Supreme Court decision in *Commonwealth v.*

*Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), requires a different result, I dissent.