J-A06021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| LORI ANN TEITSWORTH | |
| Appellee | No. 956 MDA 2015 |

Appeal from the Order Entered April 30, 2015
In the Court of Common Pleas of Montour County
Criminal Division at No(s): CP-47-CR-0000189-2014

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                         **FILED JULY 14, 2016**

The Commonwealth of Pennsylvania appeals from an order of the Court of Common Pleas of Montour County that, *inter alia*, granted Lori Ann Teitsworth's motion to suppress statements she made to a state trooper because he did not advise her of her rights pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966).  Upon careful review, we reverse in part and remand for further proceedings.

The trial court set forth the factual history of this case as a follows:

On June 9, 2014, at approximately 11:55 [a.m.], [Teitsworth] was parked, front in, in a farm lane located perpendicular to, and west of, Diehl Rd., approximately twenty feet off of Diehl Rd. Trooper Joshua Kendrick passed the site in a marked police vehicle in a south[erly] direction and noticed a vehicle and a person sitting in the driver's seat.  About 20-30 minutes later, Tpr. Kendrick returned, now traveling north, and noticed the same vehicle located in the same place, again with a person sitting in the driver's seat.  Tpr. Kendrick stopped to inquire into whether the driver needed assistance.  He parked in a manner

which did not block Teitsworth's vehicle and did not activate his emergency lights. He approached the vehicle and noticed the driver making movements toward the front passenger seat. When Tpr. Kendrick arrived at the vehicle to inquire into the driver's well-being, he saw that Teitsworth was the driver and [she] opened her window. Immediately, Tpr. Kendrick detected a strong odor of marijuana come out of the window.

. . .

Eventually, Tpr. Kendrick asked [Teitsworth] to exit her vehicle. She was pacing, speaking very quickly and gave multiple, inconsistent stories on her destination.

. . .

Tpr. Kendrick then asked [Teitsworth] to consent to the search of her vehicle. [Teitsworth] asked if she could decline, and Tpr. Kendrick said that she could, but that her vehicle would be impounded and that a search warrant would be secured. Upon hearing that, [Teitsworth] signed a "Consent to Search" form, in which [Teitsworth] consented to the search of her vehicle. The form said nothing as to a search of items in the vehicle such as [Teitsworth's] purse. Tpr. Kendrick found drugs and contraband in the center console and in [Teitsworth's] purse.

Trial Court Opinion and Order, 4/30/15, at 1-2.

At the conclusion of a hearing on Teitsworth's suppression motion, the trial court determined that the stop was a custodial detention. As such, Teitsworth was entitled to **Miranda** warnings, and her statements were suppressed.

The Commonwealth filed a timely appeal,[1] in which it raises the following issue for our review:

---

[1] The Commonwealth brings this appeal pursuant to Rule of Appellate Procedure 311(d), which provides:
*(Footnote Continued Next Page)*

> Whether [Teitsworth] was the subject of a custodial detention in the instant case, thereby requiring her statements to the police be suppressed in the absence of **Miranda** warnings.

Appellant's Brief, at 4.

An appellate court's review is "limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct." **Commonwealth v. James**, 69 A.3d 180 (Pa. 2013) (citing **Commonwealth v. Briggs**, 12 A.3d 291, 320-21 (Pa. 2011)). Factual findings are binding, but legal conclusions are reviewed de novo. **Id.**

Our Supreme Court has noted:

> There are three relevant cognizable categories of interactions between persons and police: a mere encounter, an investigative detention, and a custodial detention or arrest. A mere encounter need not be supported by any level of suspicion, and does not require a person to stop or respond. An "investigative detention," or **Terry**[2] stop must be supported by reasonable suspicion; it subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. An arrest or custodial detention must be supported by probable cause.

*(Footnote Continued)* ————————

> (d) Commonwealth appeal in criminal cases. In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d).

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

*Commonwealth v. Chase*, 960 A.2d 108, 117 (Pa. 2008) (citations and quotations omitted).

The United States Supreme Court detailed the *Miranda* requirements for each category of police-citizen interaction in *Berkemer v. McCarty*, 468 U.S. 420 (1984). In *Berkemer*, the defendant was driving on an interstate highway, weaving between lanes for approximately two miles. An Ohio State Trooper stopped the defendant and asked him to get out of his vehicle. Upon seeing that the defendant had difficulty standing, the trooper concluded that he would charge the defendant with a traffic offense. However, the trooper did not tell the defendant that he would be taken into custody, or restrained in any way. During the interaction the defendant admitted to consuming both alcohol and marijuana. Defendant was not given *Miranda* warnings during this exchange, and as such he moved to suppress his statements. *Berkemer*, 468 U.S. at 422-25.

The issue in *Berkemer* was whether a traffic stop and subsequent roadside questioning of the motorist constituted a custodial interrogation requiring the trooper to give the defendant *Miranda* warnings. The Court held that *Miranda* warnings are required in situations that implicate the concerns that the Court faced in *Miranda*, i.e., a situation in which a detained individual is pressured into self-incrimination in violation of his constitutional rights. *Berkemer*, 468 U.S. at 437. Two factors were found to distinguish traffic stops from the forms of detention that would require *Miranda* warnings: the brief and temporary nature of the interaction, and

the public nature of the stop, which prevents the detained motorist from being completely at the mercy of the officer. *Berkemer*, 468 U.S. at 437-38. As such, traffic stops like the one in *Berkemer* were found to be more analogous to the *Terry* stops, in which an officer who has reasonable suspicion that a person is involved in a crime may briefly detain the individual and conduct a brief investigation that is reasonably related in scope to the original justification for the stop. *Berkemer*, 468 U.S. at 438. Therefore, the United States Supreme Court held that due to the non-coercive aspects of ordinary traffic stops, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Berkemer*, 468 U.S. at 440.

When attempting to determine if a stop is investigative or custodial, courts examine the totality of the circumstances, rather than focus on any one specific factor. The factors to be considered are:

> The basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Commonwealth v. Revere*, 814 A.2d 197, 200 (Pa. Super. 2002) (citations omitted).

In the case *sub judice*, the traffic stop was not so out of the ordinary as to require a departure from the rule established in *Berkemer* that *Miranda* does not apply in ordinary traffic stops. While the stop began as a

mere encounter with Trooper Kendrick looking to offer assistance, it escalated into an investigative detention, or *Terry* stop, once Trooper Kendrick smelled the burnt marijuana odor in the car and had reasonable suspicion that Teitsworth was committing drug-related offenses. His subsequent investigation did not curtail Teitsworth's freedom in a manner that would be excessive compared to an ordinary traffic stop. Teitsworth was neither arrested, nor placed in Trooper Kendrick's vehicle, nor told not to move about, nor restricted in movement in any way. In fact, Teitsworth was given such latitude to move about freely that Trooper Kendrick had to follow her around the area to converse with her.

In addition to Teitsworth's freedom of movement, we find that the other factors weigh in the Commonwealth's favor for the following reasons: Trooper Kendrick had reasonable suspicion once he smelled the burnt marijuana inside the car; the detention lasted no longer than an ordinary traffic stop; the detention occurred on a public road; there was no show, threat, or use of force at any time; and Trooper Kendrick diligently pursued an investigation designed to confirm or dispel his suspicion that Teitsworth was engaged in drug-related activity. Therefore, given the totality of the circumstances surrounding the traffic stop, we conclude that the stop was an investigative detention and that Trooper Kendrick was not required to read *Miranda* warnings to Teitsworth.

The trial court found that Teitsworth was in custody for the duration of the traffic stop, because Trooper Kendrick "admitted that [Teitsworth] was

- 6 -

not free to leave as of the time that the officer smelled burned marijuana." Trial Court Opinion, 7/21/15, at 1. This conclusion is flawed for two reasons. First, it determines the custodial nature of the stop by focusing on only one factor, the internal thoughts of Trooper Kendrick, rather than by considering the totality of the circumstances as discussed above. Second, Trooper Kendrick did not inform Teitsworth at any time that she was being detained; in fact, Teitsworth retained significant freedom to move about as she pleased.

The United States Supreme Court in **Berkemer** noted that

[a] policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.

**Berkemer**, 468 U.S. at 441-42. Because Trooper Kendrick did not articulate his plans to detain Teitsworth at any time during the stop, the important factor becomes what a reasonable person would have believed in Teitsworth's situation. Given the factors noted in **Revere**, **supra**, it was reasonable for Teitsworth to believe she was not being detained. Accordingly, Trooper Kendrick's unexpressed thoughts and intentions are not dispositive of whether Teitsworth was in custody.

The totality of the circumstances weighs in favor of the Commonwealth. The traffic stop was an investigative detention and due to its non-coercive nature, Trooper Kendrick was not required to give

- 7 -

Teitsworth ***Miranda*** warnings during the stop.  Therefore, the trial court erred by suppressing her statements.

Accordingly, the order entered April 30, 2015, is reversed with respect to the suppression of Teitsworth's statements.

Order reversed in part.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2016